No. 47,728

STATE OF KANSAS, *Appellee,* v. ROBERT GLOVER, *Appellant.*

(547 P. 2d 351)

Opinion filed March 6, 1976.

*Harold Crook,* of Pittsburg, argued the cause, and *Curtis A. Parks,* of Tulsa, Oklahoma, was with him on the brief for the appellant.

*Douglas L. Baker,* Assistant County Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, *George H. Herrelson, Jr.,* County Attorney, and *David F. Brewster,* Assistant County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant-appellant, Robert Glover, appeals from a conviction of theft. The specific charge was obtaining control over stolen property of a value of more than $50.00, knowing the property to have been stolen in violation of K. S. A. 21-3701 (*d*). The property in question was allegedly taken in the burglaries of two residences near Saginaw, Missouri. In the course of the investigation of the burglaries a search warrant was secured for defendant's residence in Galena, Kansas, where numerous items of property were found, which were identified as having been taken

in the burglaries. The stolen property included several guns, a typewriter, and a tape recorder, which were admitted into evidence and identified by the burglary victims by serial number comparison as property which had been taken from their homes.

In addition to the testimony of the burglary victims the state submitted that of Russell Buckmaster, his wife, Iva June, and defendant's ex-wife, Geraldine, who was married to defendant at the time of the burglaries on October 12, 1971, but was divorced prior to trial. The Buckmasters and Geraldine related similar versions of the burglaries. According to their testimony the Buckmasters, the Glovers, and one Leonard Joe Baker met for breakfast on the morning of October 12, 1971, and then drove to the vicinity of Saginaw, Missouri, where they burglarized two residences. The group loaded the loot and returned to the Glover home in Galena. The three witnesses further testified that defendant paid Buckmaster and Baker $115 each for their respective shares of the stolen property.

Defendant took the witness stand in his own behalf and testified that he had left Galena on October 10, picked up his truck in Tulsa, Oklahoma, and then in company with his brother and a cousin drove to Nebraska City, Nebraska, where they loaded the truck with fruit and went to St. Cloud, Minnesota. Defendant further testified that he sold fruit off the truck for the next four or five days before returning home. He testified that upon his return he was informed by his wife that the items of property in question had been delivered by the Buckmasters for him to purchase.

In one of two points on appeal defendant contends the verdict is not supported by sufficient evidence. He argues that the evidence tending to indicate that he participated in the crime is wholly circumstantial—at best showing only a probability of guilt, and, therefore, is insufficient to warrant a conviction. Defendant's contention is without merit.

It is true, the verdict is contrary to defendant's testimony. However, the jury chose to believe the testimony of the Buckmasters and Geraldine, which was ample to establish that defendant had custody and control of the stolen articles knowing them to be stolen.

The applicable rule governing review of criminal appeals was recently stated in *State v. Brown,* 217 Kan. 595, 538 P. 2d 631:

" 'In a criminal case, the issue on appeal is not whether the evidence establishes guilt beyond a reasonable doubt, but whether the evidence is sufficient to form the basis for a reasonable inference of guilt when viewed in the light

most favorable to the state.' (Syl. ¶ 1.) [*State v. Ritson,* 215 Kan. 742, 529 P. 2d 90.]" (p. 603.)

Defendant also contends the trial court erred in permitting his ex-wife, Geraldine, to testify over his objection concerning confidential communications during the existence of the marital relationship.

Defendant asserts that under the provisions of K. S. A. 60-423 (*b*) he had a privilege to prevent his former wife from testifying. The statute reads in pertinent part:

"(*b*) An accused in a criminal action has a privilege to prevent his spouse from testifying in such action with respect to *any confidential communication* had or made between them while they were husband and wife. . . ." (Emphasis supplied.)

In response to defendant's assertion the state says that the privilege was terminated upon the divorce and, further, that the wife's testimony did not disclose any communication between herself and defendant, but only described defendant's conduct and activities; and, furthermore, there was no confidentiality because of the presence of the Buckmasters and Baker. The state cites *State v. Hill,* 211 Kan. 287, 507 P. 2d 342, wherein we held:

"Defendant cannot claim marital privilege to suppress testimony against him by his putative spouse after satisfactory proof is presented that their marriage is invalid." (Syl. ¶ 11.)

Since our holding in *Hill* was based upon an invalid marriage the decision is not pertinent to the issue presented here where the validity of defendant's marriage to Geraldine, at the time of the commission of the offense, is not questioned.

The state makes no contention that defendant's testimony concerning conversations with his wife constituted a waiver by him of the privilege; therefore, we have not considered the matter of waiver.

The assertions made by the state indicate a failure to distinguish the import of 60-423 (*b*), prescribing the privilege of an accused in a criminal action regarding marital privilege from the basic marital privilege set forth in K. S. A. 1975 Supp. 60-428. (See Vol. 4 Vernon's Kansas Statutes Annotated, Code of Civil Procedure [Fowks—Harvey—Thomas], § 60-423, Advisory Committee Notes, pp. 295-296.) The marital privilege declared in 60-428 reads in pertinent part:

"(*a*) *General rule.* Subject to K. S. A. 60-437 and except as otherwise provided in subsections (*b*) and (*c*) of this section, a spouse who transmitted to the other the information which constitutes the communication, has a privilege

during the marital relationship which he may claim whether or not he is a party to the action, to refuse to disclose and to prevent the other from disclosing communications found by the judge to have been had or made in confidence between them while husband and wife. . . ."

K. S. A. 1975 Supp. 60-428 is a restatement with several significant modifications of G. S. 1949, 60-2805, the former statutory declaration of the marital privilege. 60-423 (*b*), on the other hand, replaces G. S. 1949, 62-1420, which stated the husband and wife privilege in criminal cases in terms of incompetency.

K. S. A. 60-423 (*b*) works a radical change in the former rule. The privilege is now vested in the accused rather than in the spouse who happened to be the transmitter of the communication in question. Concerning the change, Judge Gard (Gard, Kansas Code of Civil Procedure Annotated, § 60-423, pp. 399-400) writes:

"(*b*) This subsection changes the Kansas rule altogether. . . .
"The privilege is here vested in the accused rather than in his spouse, and the protection is limited to confidential communications which have passed between them. This is as it should be, as it is the confidence which is entitled to protection, not the spouses nor the family relationship where crime is involved. The privilege here stated is broader than that contained in section 60-428 which limits the privilege in other situations to those of the 'communicating spouse.' "

Concerning the termination of the marital privilege under rule 60-428, as compared with termination of the privilege granted in 60-423 (*b*), Judge Gard says:

"Attention is called to the fact that the privilege exists only during the marriage relationship. If the marriage has been terminated by death or divorce the privilege no longer exists. This is in contrast to the privilege a defendant has in a criminal action to prevent his spouse from testifying as to any communication between them made during the existence of the marriage relationship." (p. 415.)

For comment in accord see also Vol. 6 Washburn Law Journal, Husband-Wife Privilege in Kansas, The Effect Of The New Kansas Rules Of Evidence, pp. 144-158.

We read the protection of the privilege under 60-423 (*b*) as going to any confidential communication between husband and wife during the marriage relationship, rather than a privilege granted to a transmitting spouse during the marital relationship under 60-428. In other words, the privilege given to an accused against disclosure of confidential communications made during marriage survives dissolution of the marriage as opposed to the privilege granted during the marital relationship under rule 60-428.

Even though we have construed 60-423 (*b*) contrary to the state's

assertion that the privilege terminated upon divorce, defendant's position cannot be sustained. We have called for the trial transcript in the instant case and have carefully examined the testimony of Geraldine Glover. Her testimony concerned the activities of the five persons involved in the burglaries (herself, defendant, the Buckmasters and Baker). She did not testify to any conversation or action spoken or done in confidence with her husband. Other parties were present or participating in all of the activities about which she testified. Our statute expressly limits the privilege to communications which are confidential. Under the circumstances of the instant case, the testimony of Geraldine did not divulge any confidential communications. The general rule concerning confidentiality is stated in 81 Am. Jur. 2d, Witnesses, § 155, in these words:

". . . [T]he broad general rule followed by nearly all of the courts is that a conversation, communication, or transaction between husband and wife, or a statement made by one to the other, in the presence of or overheard by a third person is not within the protection of the privileged communications rule. . . ." (p. 194.)

See, also, 97 C. J. S., Witnesses, § 268, pp. 766-768. In Vol. VIII Wigmore, Evidence in Trials at Common Law, [Revised by McNaughton], § 2336, pp. 650-651, the author succinctly states:

". . . Commonly, the *presence of a third person* within hearing will negative a marital confidence; so, too, the *intended transmission* of the communication to a third person. . . ."

While *State v. Gray,* 55 Kan. 135, 39 Pac. 1050, was decided many years before the enactment of 60-423 (*b*), the holding therein accords with the authorities mentioned and the import of the statute as we read it. In the *Gray* opinion it is stated:

". . . Communications between husband and wife are not confidential when made in the presence of third parties. . . .

". . . Whatever is said in the presence and hearing of third persons has none of the characteristics or attributes of a confidential communication. There is no secrecy about it. It is then published to the witnesses, who are in no sense parties to the conjugal relation. . . ." (pp. 143-144.)

Geraldine Glover did not testify as to any confidential communications with defendant and, therefore, such testimony as she gave does not fall within the privilege under 60-423 (*b*). We find no error in the trial court's admission of her testimony into evidence.

The judgment is affirmed.