[Crim. No. 8508. Third Dist. Sept. 16, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH WILLARD McGRATH, Defendant and Appellant.

## COUNSEL

Robert M. Wheatley, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and Janice Hayes, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

EVANS, J.—Defendant appeals from a judgment of conviction of first degree murder (Pen. Code, § 187), and grand theft person (Pen. Code, § 487, subd. 2). The jury also found that in the commission of the murder, the defendant used a firearm, .a .38 caliber revolver (Pen. Code, § 12022.5).

Defendant was sentenced to state prison for each offense with an additional mandatory term for use of a firearm. Execution of sentence was stayed on the conviction of Penal Code section 487, subdivision 2. Defendant's appeal challenges the propriety of prosecution by indictment procedure (Cal. Const., art. I, § 14; Pen. Code, § 682), asserting a violation of his constitutional due process and equal protection rights, the sufficiency of the evidence to support a conviction of grand theft

person, and asserts the trial court erred in refusing to instruct the jury that it could convict defendant of the lesser offense of removing articles of value from the body of a dead person (Pen. Code, § 642). Our review of the record persuades us that the defendant's assignments of error must be rejected and the convictions affirmed.

## FACTS

The victim Patrick Markell was murdered in late March 1975. He was shot three times in the back with a .38 caliber Smith and Wesson pistol and buried in a shallow grave in the Loomis area of Placer County. When the body of the victim was discovered, the pockets had been removed from his clothing and all identification and money taken.

Phillip Wood testified that in early March 1975, defendant told him and Dan Chrisman that defendant had seen a homosexual attack on a young boy by Patrick Markell; that Markell was a "faggot," and defendant was going to "ice" him. Wood and Chrisman tried to dissuade defendant from killing Markell, suggesting that he simply "beat the hell out of him and leave him in the field;" defendant responded that "was a little too good for him," and that he had "something special" for Markell.

Wood also testified that on March 28, 1975, defendant showed him a .38 caliber pistol (subsequently established as the weapon used in the killing) and stated, "I made the hit." At that time defendant had a substantial sum of money and had purchased one or two hundred dollars' worth of hashish that day.

On May 1, 1975, Wood asked defendant "if he really did it." Defendant replied, "hell, yes," and explained that he had induced Markell to go to the "Chrisman property," the "old ranch" where Dan Chrisman had lived by telling him "this was the only place that this man with the drugs would meet them." Defendant told Wood that Clifford Cordier was with him when he killed Markell. Wood testified that defendant said, "Clifford was in front of Patrick Markell on a trail; . . . they had been walking on a trail and Pat, . . . was right behind Cliff and [defendant] was right behind Pat, and they had been walking along, and Clifford looked back and, . . . jumped off the path." Defendant said he then shot him with the .38 caliber Smith and Wesson and continued shooting until Markell hit the ground.

Wood testified the defendant said that he and Cordier took five or six hundred dollars from Markell which they divided and then buried Markell's body.

Markell resided with a roommate at 4405 Rocklin Road in Rocklin. His roommate testified that on March 26, 1975, Markell borrowed $200 which he put in his right front pocket together with another $250. He also had a small amount of cash in his left front pocket. Markell told his roommate he was going to Loomis to purchase narcotics. Later, the roommate heard a car pull into the driveway. Markell got up, looked out the window, told his roommate "they" were here and left.

Michael Shumaker testified that on a date he could not recall, he drove defendant and Cordier to 4405 Rocklin Road and picked up a person he believed to be Markell. At defendant's direction, Shumaker and the three others drove to the site where Markell's body was ultimately found. Defendant, Cordier, and Markell got out of the car and left the area. In 15 or 20 minutes, defendant and Cordier returned without Markell and told Shumaker that Markell was hitchhiking to see his girl friend or wife.

Defendant's roommate Charles Sexton testified that on April 16, 1975, defendant told him he had killed Pat Markell because Markell was a homosexual and had ripped him off.

On May 6, 1975, defendant was arrested on unrelated charges. At the time of his arrest, five live .38 caliber bullets were found in his pants pocket together with a piece of paper bearing Pat Markell's name.

Larry Brewer testified that on July 7, 1975, while confined in tank three of the Placer County jail, defendant also in tank three told him that he had "snuffed" someone named Pat with a .38 and that he might get the gas chamber.

## DISCUSSION

■ Contrary to defendant's contention relative to his indictment by grand jury, the laws of this state permitting a prosecutor to proceed against an accused by way of information or grand jury indictment have been consistently upheld as meeting the constitutional due process test. (*People* v. *Sirhan* (1972) 7 Cal.3d 710, 746 [102 Cal.Rptr. 385, 497 P.2d

1121]; *People* v. *Newton* (1970) 8 Cal.App.3d 359 [87 Cal.Rptr. 394]; *People* v. *Flores* (1969) 276 Cal.App.2d 61, 65-66 [81 Cal.Rptr. 197].)

■ Defendant's remaining contentions depend upon the fact that Markell was apparently dead at the time defendant and Cordier took his money. The argument is based upon the pathologist's testimony that one of the three bullets fired shattered the first sacral vertebra and cervical cord, probably causing instantaneous death.

From this, defendant argues that the evidence was insufficient to establish the crime of grand theft person[1] but was sufficient at most to support the crime of theft of articles from dead bodies. (Pen. Code, § 642.)

The circumstance that Markell may have been dead at the time of the taking (moments after the shooting) does not alter the character of the theft.

It is sufficient for purposes of robbery or grand theft from the person that the murder and taking be part of one continuous transaction. (Cf. *People* v. *Johnson* (1972) 28 Cal.App.3d 653, 658 [104 Cal.Rptr. 807]; *People* v. *Stamp* (1969) 2 Cal.App.3d 203, 210 [82 Cal.Rptr. 598].)

Our search of reported California cases fails to reveal any decisional authority precisely disposing of the novel contention raised by defendant. However, the following decisions from other jurisdictions support our conclusion. In *Carey* v. *United States* (1961) 296 F.2d 422 [111 App.D.C. 300], defendant stabbed the victim and then removed money from her dress. All evidence indicated she was dead at the time the money was taken. The court rejected the argument that the money was not taken from a person and said, "In the present case, the time interval between the stabbing of Mrs. Butler and the taking of her money was so short that it can hardly be said as a matter of law that the act of appropriation was not performed upon a 'person.' . . .

"Appellant applied deadly force to Mrs. Butler, apparently rendering her permanently unconscious of what took place shortly thereafter with respect to her money. . . . At the time her money was taken, in the particular circumstances of this case, Mrs. Butler, dead or not, was still a

---

[1]Defendant was charged with the crime of robbery; the jury was instructed on the lesser included offense of grand theft person and convicted him of that crime.

'person' as that term is understood in the robbery statute of this jurisdiction. The present robbery statute in the District of Columbia is an expansion upon the common law crime of robbery. [Citations omitted.] Under our statute, the taking by sudden, stealthy seizure or snatching without violence or putting in fear, without the victim being conscious of the taking, is robbery. . . ." (296 F.2d at p. 426.)

As the *Carey* court points out, the District of Columbia robbery statute includes the acts defined by most jurisdictions, including California, as grand theft person. (296 F.2d at p. 427.)

The Supreme Court of Washington in *State* v. *Coe* (1949) 34 Wn.2d 336 [208 P.2d 863], dealt with a similar problem:

"The final contention made is that one can not be guilty of robbery if the victim is a deceased person. As an abstract principle of law this is true, as essential elements of the crime of robbery would necessarily be lacking. However, that principle can not apply here, because the robbery and the homicide were all a part of the same transaction and the fact that death may have momentarily preceded the actual taking of the property from the person does not affect the guilt of the appellant in the commission of the crime charged. The appellant and Lillard were riding in an automobile with the deceased. The appellant was in the front seat with the deceased and Lillard was in the back seat. Lillard struck the deceased on the head with a revolver, and, upon a show of resistance, Lillard then shot and killed the deceased. The appellant took the body of the deceased from the automobile. He and Lillard conveyed it a distance from the road and took the property from the clothing of the deceased. This is not a case where the rule contended for by appellant has any application. It is not a case where the only act was the taking of property from the person of one deceased. The robbery commenced with the first overt act on the part of Lillard. The robbery and the homicide were so interwoven with each other as to be inseparable and thus present a situation clearly contemplated by Rem.Rev.Stat. § 2392(3)." (208 P.2d at p. 866. See also *Cobern* v. *State* (1962) 273 Ala. 547 [142 So.2d 869]; *State* v. *Covington* (1930) 169 La. 939 [126 So. 431]; 67 Am.Jur.2d, Robbery, § 12, p. 36.)

The factual sequence of events developed at trial is conclusive that the death of Markell and the theft of money from his person were so connected as to form but one continuous transaction. It is the invasion of

personal rights and not the defilement of a corpse that occurs when a theft is perpetrated immediately after killing the victim. The fortuity that the victim may be dead rather than simply unconscious or unaware of the theft does not make the crime any less personal. The killing of a human being is the ultimate personal invasion; one who kills and then steals from the victim cannot reasonably be said to be stealing from a corpse.

The record reveals substantial evidence to support the convictions of murder in the first degree and grand theft person.

The judgment is affirmed.

Puglia, P. J., and Friedman, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 12, 1976.