No. 53,282

STATE OF KANSAS, *Plaintiff-Appellee,* v. JOE MYERS, JR., *Defend-
ant-Appellant.*

(640 P.2d 1245)

Opinion filed
February 27, 1982.

*Roger L. Unruh,* of McKone & Unruh, of Junction City, argued the cause and
was on the brief for the appellant.

*Keith D. Hoffman,* county attorney, argued the cause, and *Robert T. Stephan,*
attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal from convictions of voluntary
manslaughter (K.S.A. 21-3403), aggravated robbery (K.S.A. 21-
3427), and arson (K.S.A. 21-3718). The evidence presented by the
State at the trial was essentially as follows: The defendant, Joe
Myers, Jr., was at a house in Junction City on the evening of
November 29, 1979, together with Richard L. Heafner. Heafner
was to sell a quantity of marijuana later that evening with the
assistance of defendant. Some time around midnight, the de-
fendant and Heafner left the house and drove to the residence of
Jon Sinnard where they smoked marijuana, drank beer, and
talked. At about 3:00 a.m., Myers and Heafner left the Sinnard
residence with the marijuana. Later on that morning, Sinnard was
awakened by defendant Myers who related that he and Heafner
had had an argument and that Myers had returned to get Sinnard
to help solve the dispute. Defendant's clothes were covered with
blood. He asked Sinnard for a change of clothes, including boots,
which he was given. Defendant also asked Sinnard for an auto-

matic pistol which was also given to him. Defendant then left in Heafner's car after instructing Sinnard to follow him in Sinnard's car. The two drove a distance out in the country where defendant parked Heafner's vehicle. Defendant then got into Sinnard's vehicle and told him where to drive. Sinnard drove some distance to the point where Heafner's body was later found. At that location defendant told Sinnard that he had shot Heafner and he wanted to be sure Heafner was dead.

Defendant then left the vehicle for the purpose of getting all of Heafner's "identification and stuff" from his body. Defendant went to Heafner's body and removed his wallet, keys, and a black notebook. He then returned to the car. Defendant asked permission to put Heafner's body in the trunk of Sinnard's car, but Sinnard refused. Defendant then placed Heafner's body in a culvert. He then directed Sinnard to drive back to the Heafner car. While en route, defendant took the money from Heafner's wallet and put it in his pocket. Myers tore up Heafner's notebook and wallet and threw them out the window. Thereafter, defendant drove Heafner's vehicle to an isolated spot and set it on fire. Sinnard then drove Myers back to his trailer. Following his conviction, defendant appealed to this court.

Defendant's first point on appeal is that the trial court erred in admitting into evidence, over defendant's objection, certain confidential letters written by the defendant to his wife. The letters contained damaging admissions made by the defendant. The State called as a witness, Arthur Cassity, a friend of both Myers and Sinnard. Cassity testified that the defendant's wife, Nanette, had resided in the basement of his home and that he had found the letters under the mattress of a bed in the basement about three months after Nanette had moved out. Cassity delivered the letters to Jon Sinnard who, in turn, turned the letters over to the law enforcement officers.

In support of his position that the trial court erred in admitting the letters into evidence, the defendant contends that the letters were confidential communications inadmissible under K.S.A. 60-423 and K.S.A. 60-428. K.S.A. 60-423 states in part as follows:

"60-423. **Privilege of accused.** (a) Every person has in any criminal action in which he or she is an accused a privilege not to be called as a witness and not to testify.

"(b) An accused in a criminal action has a privilege to prevent his or her spouse from testifying in such action with respect to any confidential communication had

or made between them while they were husband and wife, excepting only (1) in an action in which the accused is charged with (*i*) a crime involving the marriage relation, or (*ii*) a crime against the person or property of the other spouse or the child of either spouse, or (*iii*) a desertion of the other spouse or a child of either spouse, or (2) as to the communication, in an action in which the accused offers evidence of a communication between himself or herself and his or her spouse."

K.S.A. 60-428 reads as follows:

"60-428. **Marital privilege, confidential communications.** (*a*) *General rule.* Subject to K.S.A. 60-437 and except as otherwise provided in subsections (*b*) and (*c*) of this section, a spouse who transmitted to the other the information which constitutes the communication, has a privilege during the marital relationship which he or she may claim whether or not a party to the action, to refuse to disclose and to prevent the other from disclosing communications found by the judge to have been had or made in confidence between them while husband and wife. The other spouse or either his or her guardian or conservator may claim the privilege on behalf of the spouse having the privilege.

"(*b*) *Exceptions.* Neither spouse may claim such privilege (1) in an action by one spouse against the other spouse, or (2) in an action for damages for the alienation of the affections of the other, or for criminal conversation with the other, or (3) in a criminal action in which one of them is charged with a crime against the person or property of the other or of a child of either, or a crime against the person or property of a third person committed in the course of committing a crime against the other, or bigamy or adultery, or desertion of the other or of a child of either, or (4) in a criminal action in which the accused offers evidence of a communication between him or her and his or her spouse, or (5) if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the communication was made, in whole or in part, to enable or aid anyone to commit or to plan to commit a crime or a tort.

"(*c*) *Termination.* A spouse who would otherwise have a privilege under this section has no such privilege if the judge finds that such spouse while the holder of the privilege testified or caused another to testify in any action to any communication between the spouses upon the same subject matter."

The relationship between these two statutory provisions is discussed in some depth in *State v. Glover,* 219 Kan. 54, 547 P.2d 351 (1976). It is clear that K.S.A. 60-423 is not applicable in this case because defendant's spouse, Nanette Myers, was not called by the State to testify in the action.

In considering the applicability of K.S.A. 60-428, the issue presented, simply stated, is this: whether a confidential letter written by a defendant in a criminal case to his wife is admissible, if the wife inadvertently permits the letter to fall into the hands of a third person. In considering this issue, we should first examine the language used in K.S.A. 60-428. The statute states, in substance, that a spouse who transmits a confidential communication

to the other has a privilege *to refuse to disclose and to prevent the other from disclosing the communication.* The statutory language does not specifically cover situations where a confidential letter inadvertently comes into the hands of a third party. Prior to the adoption of K.S.A. 60-428, the Kansas cases held that, in a criminal prosecution, where a letter previously written and sent by the defendant to his wife is in the custody and control of a third person, such letter may be used as evidence in the case by the prosecution against the defendant. *State v. Buffington,* 20 Kan. 599 (1878). Likewise, in the case or an oral communication between husband and wife, the rule was recognized that where a third person overhears a conversation between husband and wife, the third person may testify as to the conversation. *Bank v. Hutchinson,* 62 Kan. 9, 61 Pac. 443 (1900); *Eagon v. Eagon,* 60 Kan. 697, 57 Pac. 942 (1899); and *State v. Gray,* 55 Kan. 135, 143, 39 Pac. 1050 (1895). K.S.A. 60-428 created a new marital privilege which provides increased protection for confidential communications between husband and wife. K.S.A. 60-428 is a restatement with several significant modifications of G.S. 1949, 60-2805. The interrelationship between the statutes is discussed by Justice Kaul in *State v. Glover,* 219 Kan. at 56-58. See also Note, *Husband—Wife Privilege in Kansas, The Effect of the New Kansas Rules of Evidence,* 6 Washburn L. J. 144 (1966).

The effect of knowledge of a third person acquired by overhearing or seeing communication between husband and wife upon the rule as to privileged communication is the subject of an annotation in 63 A.L.R. 107. It is pointed out in the annotation that the cases considering the admissibility of written communication between husband and wife are in irreconcilable confusion. In some cases, the simple fact that the letters were found in the possession of a third person seems to be regarded as sufficient to render them admissible in evidence. Some courts hold that the testimony of a third person, who gains possession of a confidential letter without the connivance of the spouse to whom it was addressed, is admissible. Some courts hold admissible testimony of a third person, even though a confidential letter was voluntarily delivered by the addressee-spouse to the third person in violation of the confidential relationship. To the contrary, several courts have held that the testimony of a third person who obtains possession of the confidential letter with the connivance of the

spouse is not admissible. Other courts hold that confidential letters from a husband to his wife are inherently and absolutely privileged communications and not admissible in evidence, no matter in whose hands they may be. The cases from the various jurisdictions, which take these widely variant positions, are cited in the annotation mentioned above.

This wide disparity in the law is also recognized in 3 Jones on Evidence § 21:4, p. 752 (6th ed. 1972). In 8 Wigmore on Evidence § 2339 (3rd ed. 1940), the author suggests that for documents of communication coming into the possession of a third person, a distinction should be made and admission should depend on whether possession was obtained from the addressee-spouse by voluntary delivery or obtained without the addressee-spouse's consent. Wigmore suggests that, in the first situation, where there is voluntary turnover to a third person, the document should still be privileged, while in the latter situation the privilege should cease.

In the present case, as noted above, the confidential letters written by the defendant to his wife were found under the mattress of the bed in the room after defendant's wife had vacated the premises. There is nothing in the record to show that the defendant's wife violated the confidentiality of the marital relationship by voluntarily turning the letters over to the police authorities. From our analysis of the cases and the language of K.S.A. 60-428, we have concluded that the better rule to be followed in this state is that where a written confidential communication between husband and wife falls into the hands of a third party inadvertently and without the consent or connivance of the addressee-spouse, the third party should be permitted to testify as to the communication. In reaching this conclusion, we have concluded that, so far as possible, the public interest would be best served by the requirement that all facts relevant to a litigated issue should be available to the court to the end that the truth may be ascertained. Exceptions to this general rule must, of course, be recognized where privileges are created by statute. We believe the purpose of the marital privilege is to protect the *confidential relationship* between husband and wife. K.S.A. 60-428 gives a spouse a privilege to refuse to disclose or *to prevent the other from disclosing* communications found by the judge to have been made between them while husband and wife. Under

the statute, a defendant charged with a crime has a right *to prevent the other* from violating the confidentiality of the marital relationship by disclosing a confidential communication. Where, however, the confidential communication inadvertently and unintentionally falls into the hands of a third person, the admission of testimony about the confidential communication would not constitute a violation of the marital privilege.

Such a rule, as applied to written communications, is entirely consistent with the rule, almost universally accepted, that oral statements of one spouse to another are admissible when overheard by a third person even without the knowledge or consent of the spouses. For the reasons set forth above, we hold that the trial court did not err in admitting into evidence the confidential letters written by the defendant to his wife which came into the possession of a third person without the connivance of the defendant's wife.

The defendant's second point on the appeal is that the district court erred in not granting the defendant's motion for acquittal on the charge of aggravated robbery. The defendant contends, in substance, that since the wallet and money were taken from the body of Richard Heafner about three hours after he was killed, the property was not taken by force or threat of force and, therefore, the essential elements of aggravated robbery had not been established. K.S.A. 21-3426 provides that robbery is the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another or by force. Aggravated robbery, K.S.A. 21-3427, is a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery. Here the evidence was undisputed that the defendant shot Richard Heafner with a revolver, a dangerous weapon, and that the defendant was armed with a dangerous weapon at the time he later removed the property from Heafner's body.

In support of his position, the defendant maintains that the crime of robbery requires the threat or force to be concurrent with the taking of the property. He then argues that the robber must use the force with the intent to steal, *i.e.* the intent for the force and the theft must coincide in time. He then reasons that, since he did not possess the intent to steal at the time he shot Richard Heafner, he could not be guilty of robbery. The State, on the other

hand, maintains that the shooting of Heafner by the defendant was the force which enabled the defendant to steal Heafner's belongings without resistance and that it was all part of one continuous transaction. The defendant in support of his position cites *People v. Pack,* 34 Ill. App. 3d 894, 341 N.E.2d 4 (1976), where the court stated that the defendant could not be convicted of robbery where he originally had the intent to kill, and then after thinking the victim was dead, as an afterthought, stole some property from the body of the unconscious victim. The State in support of its position cites *People v. McGrath,* 62 Cal. App. 3d 82, 133 Cal. Rptr. 27 (1976); and *Carey v. United States,* 296 F.2d 422 (D.C. Cir. 1961). Also in support of the State's position are *Cobern v. State,* 273 Ala. 547, 142 So.2d 869 (1962); *State v. Covington,* 169 La. 939, 126 So. 431 (1930); *State v. Coe,* 34 Wash. 2d 336, 208 P.2d 863 (1949).

We have read the few cases on this issue and have concluded that the trial court did not err in holding that the evidence was sufficient to prove the defendant guilty of aggravated robbery under the factual circumstances presented in this case. In arriving at this conclusion we rely primarily on *State v. Hayes,* 518 S.W.2d 40 (Mo. 1975), and *People v. McGrath,* 62 Cal. App. 3d 82. In *Hayes,* the Missouri court reasoned that, although the robbery statute proscribed the taking of property from the person or presence of the victim, the thrust of the statutes and the distinctive characteristic of the crime of robbery is that violence to the victim or putting him in fear is the *means* by which the property is taken from his possession or control.

In *People v. McGrath,* the California court held that although the victim was apparently dead from a bullet fired by defendant at the time the defendant took his money moments after the shooting, the defendant was properly convicted of the higher crime. It was sufficient that the shooting and the taking of the property were a part of one continuous transaction.

We thus hold that, under factual circumstances where a defendant shoots his victim and later decides to take and remove the victim's personal belongings, where the act of force and the taking of the property are so connected as to form a continuous chain of events so that the prior force makes it possible for the defendant to take the property from the victim's body without resistance, that is sufficient for a conviction of the crime of

robbery under K.S.A. 21-3426. Since the killing was accomplished with a dangerous weapon, a violation under K.S.A. 21-3427 was established by the evidence.

The judgment of the district court is affirmed.