# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KA-00018-SCT

*DAVID ALLEN ARTHUR*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/27/95 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | FRANK J. CAMPBELL |
| | BARRETT BLAKE TELLER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | MARTIN G. GILMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 3/25/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/15/99 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. David Allen Arthur ("Arthur") was charged with capital murder in the slaying of Brian McCown ("McCown") in the Circuit Court of Warren County Mississippi. After a four day trial the jury found Arthur not guilty of capital murder, not guilty of murder less than capital, but guilty of simple robbery, a charge for which Arthur was never separately indicted. The trial court denied Arthur's request that the verdict be vacated, and Arthur filed a writ of habeas corpus with this Court. This Court denied relief but remanded the case and instructed an appellate bond to issue pending Arthur's appeal. No. 94-M-01055-SCT (1996). Arthur now appeals to this Court, raising the following arguments for consideration:

**I. ARTHUR'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED BY THE ALMOST TWELVE MONTH DELAY BEFORE HIS TRIAL.**

**II. THE TRIAL COURT IMPROPERLY PROHIBITED THE DEFENSE FROM FULLY PRESENTING RELEVANT EVIDENCE OF THE MENTAL INSTABILITY OF ARTHUR'S CO-INDICTEE, WHO WAS THE STATE'S KEY WITNESS.**

**III. THE DEFENDANT'S CONVICTION FOR SIMPLE ROBBERY VIOLATES DUE PROCESS BECAUSE THE STATE, DEFENSE, AND THE COURT HAD AGREED A SIMPLE ROBBERY INSTRUCTION WAS NOT WARRANTED, AND THE ROBBERY VERDICT WAS NOT SUPPORTED EITHER BY THE EVIDENCE OR BY APPROPRIATE INSTRUCTION.**

## FACTS

¶2. The facts of this case center around the brutal murder of Brian McCown in the early morning hours of July 17, 1994. The facts, as developed at trial, are as follows.

¶3. On the night of July 16, 1994 Arthur, then 15 years old, and Stephens, 19 years old, set out for a night of drinking, smoking pot and general dereliction. After making numerous stops for beer, searching in vain for Stephens' girlfriend and hitting all the local hangouts, the two began to wander home. Coming down the exit ramp at Hall's Ferry Road in Vicksburg they saw Brian McCown, who had been drinking at the Ameristar Casino. They offered him a ride and suggested he go drink beer with them. After stopping at Stephens' sister's house, where Stephens retrieved a hammer, the three went to a secluded area in Warren County, near Bovina, the abandoned bridge over Clear Water Creek at the end of Fox Run Road.

¶4. There, after drinking more beer and smoking pot laced with cocaine, Brian McCown was murdered. He was stabbed multiple times, and his head was bashed in with a hammer with such force that pieces of his skull were implanted into his bruised brain. McCown was also gutted, literally eviscerated, so that his intestines were outside of his body. After stealing his belongings, including his tennis shoes, his wallet containing approximately $13.00, a watch and two rings, the two unceremoniously dragged McCown's body to the middle of the abandoned bridge, and kicked him over the edge into the Clear Water Creek.

¶5. The police were called when McCown's body was discovered the next day. After an investigation, both Arthur and Stephens were arrested and charged with the capital murder of Brian McCown, predicated on the underlying felony of robbery. Trial was held on July 17, 1995. Stephens pled guilty to the murder and armed robbery, received life without parole and proceeded to testify against Arthur.

¶6. The defense's theory of the case was that Stephens was a mentally deranged drug addict who without warning ambushed McCown, slit his throat, returned to the car and retrieved a hammer, bashed McCown's head in, and then gutted him. Arthur, the defense put forth, "froze" during these happenings, and only upon threat of similar treatment by Stephens, did he then help Stephens drag McCown to the bridge and dump his body.

¶7. The state's theory of the case, based on Stephens' testimony, was that the two planned to rob McCown, and that Arthur stabbed and gutted him, while Stephens assisted by bashing him in the head with a hammer.

¶8. Extensive discussion was held in chambers concerning whether a separate lesser included offense instruction on robbery should be given. Ultimately it was decided by the lower court and all parties that such an instruction was not warranted under the facts of this case.

¶9. The jury believed Arthur, and acquitted him of capital murder and murder less than capital. The jury however, without a separate lesser included offense instruction, did find Arthur guilty of simple robbery.

## LEGAL ANALYSIS

## I. ARTHUR'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED BY THE ALMOST TWELVE MONTH DELAY BEFORE HIS TRIAL.

¶10. Arthur was 15 years of age at the time of his arrest and incarceration on July 24, 1994. Prior to prosecution a year later on July 17, 1995, for capital murder, Arthur was denied bond by the County Court of Warren County who found in the wake of a preliminary hearing conducted on October 4, 1994, that ". . . there is probable cause that the offense charged . . . has been committed in Warren County, Mississippi, and that the Defendant is the one who committed this crime." Arthur's indictment was returned on November 2, 1994. Arthur was arraigned on November 4, 1994. On December 22, 1994, this Court denied Arthur's amended petition for emergency hearing of bond denial. Arthur was confined in the Warren County Jail from the date of arrest on July 24, 1994, until after his trial on July 21, 1995. His trial commenced on July 17, 1995, approximately 362 days from the date of his arrest on July 26, 1994. A period of three months elapsed between arrest and indictment, and approximately 255 days intervened between arraignment and trial.

¶11. Arthur claims on appeal that "a trial delay of almost one year violated the speedy trial rights of a 15 year old incarcerated defendant." Arthur relies on ***Barker v. Wingo***, 407 U.S. 514 (1972). The United States Supreme Court in ***Barker v. Wingo***, employed a four pronged balancing test in determining whether a defendant had been deprived of his right to a fair trial. ***Barker v. Wingo***, 407 U.S. 514, 530 (1972). The four prongs are: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. ***Id.***

¶12. In ***Barker***, the United States Supreme Court held:

> The length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.

***Id.*** at 530.

¶13. This Court has held in ***Smith v. State***, 550 So. 2d 406, 408 (Miss. 1989), that a delay of eight months is presumptively prejudicial. See also ***Bailey v. State***, 463 So. 2d 1059, 1062 (Miss. 1985) (298 day delay); ***Atteberry v. State***, 667 So. 2d 622, 627 (Miss. 1995); (280 day delay was well over the presumptively prejudicial requirement). The 362 day lapse in time between Arthur's arrest and trial is therefore presumptively prejudicial, requiring a close assessment of the other factors.

¶14. The second ***Barker*** factor is the reason given by the government for the delay. The United States Supreme Court in ***Barker***, held that,

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such

circumstances must rest with the government rather than with the defendant.

*Barker*, 407 U.S. at 531.

¶15. The trial judge recognized that this time delay was presumptively prejudicial but in the trial record explained the reason for the delay as an overcrowded court docket. The trial court stated, "[t]here were about 30 or 40 other cases set on that date. One of which was another murder case."

¶16. The third *Barker* factor is Arthur's responsibility to assert his right which he did. The final *Barker* factor is the resulting prejudice to Arthur. This is where Arthur loses his argument. Arthur was not prejudiced by this delay. The record is devoid of any testimony from Arthur himself reflecting anxiety and concern, and there is no evidence that Arthur's defense was impaired. Arthur was found by the jury not guilty of capital murder, and not guilty of murder less than capital. Given this outcome, no prejudice to Arthur is readily apparent.

¶17. Judge Vollor analyzed the four *Barker* factors individually and concluded that Arthur's constitutional right to a speedy trial had not been violated. The trial court was correct in his ruling. This issue is therefore, without merit.

### III. THE DEFENDANT'S CONVICTION FOR SIMPLE ROBBERY VIOLATES DUE PROCESS BECAUSE THE STATE, DEFENSE, AND THE COURT HAD AGREED A SIMPLE ROBBERY INSTRUCTION WAS NOT WARRANTED, AND THE ROBBERY VERDICT WAS NOT SUPPORTED EITHER BY THE EVIDENCE OR BY APPROPRIATE INSTRUCTION.

¶18. Having addressed issue I, the Court will now address issue III finding its outcome dispositive of this case, therefore making comment on issue II unnecessary.

¶19. Today the Court is faced with a jury which, without proper instruction, acquitted Arthur of capital murder and murder, but found him guilty of the predicate felony of robbery. The issue is the permissibility of this verdict. We hold it is possible to find a defendant guilty of a crime for which he was not separately indicted if it falls within the requirements of Miss. Code Ann. § 99-19-5, and in the present case, it was legally possible for the jury to find Arthur guilty of robbery alone.

¶20. Mississippi Code Ann. § 99-19-5 (Rev. 1994), states:

On an indictment for any offense the jury may find the defendant guilty of the offense as charged, or of any attempt to commit the same offense, or may find him guilty of an inferior offense, **or other offense, the commission of which is necessarily included in the offense with which he is charged in the indictment, whether the same be a felony or misdemeanor, without any additional count in the indictment for that purpose.**

(emphasis added).

¶21. The indictment in the present case stated:

The Grand Jurors of the State of Mississippi, elected, summoned, empaneled, sworn and charged to inquire in and for Warren County, State of Mississippi, at the term aforesaid, in the name and by the

authority of the State of Mississippi, upon their oaths present that Henry Ephraim Stephens, Jr. and David Allen Arthur on or about July 17, 1994 with force and arms, in the County aforesaid, and within the jurisdiction of this Court did willfully, unlawfully, feloniously with malice and aforethought kill and murder one Brian McCown, a human being at a time when the said Henry Ephraim Stephens, Jr. and **David Allen Arthur was engaged in the commission of the [f]elony crime of robbery** of the said Brian McCown, contrary to the provisions of Section 97-3-19(2)(e) of the Miss. Code Ann. 1972, contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

(emphasis added).

¶22. The jury was instructed on robbery as follows:

The Court instructs the Jury that the crime of robbery as referred in instruction S1A is defined as follows: If you find from the evidence in this case beyond a reasonable doubt that: 1. David Allen Arthur, on or about July 17, 1994, in Warren County, Mississippi, 2. did willfully take the personal property of Brian M. McCown, 3. from the presence of Brian M. McCown and against his will 4. at the time, David Allen Arthur had the intent to permanently deprive Brian M. McCown of the property, then you shall find the defendant, David Allen Arthur, guilty of robbery.

However, the form of the verdict instruction gave no option for the finding of robbery. It stated:

The Court instructs the Jury that if you find beyond a reasonable doubt that the Defendant, David Allen Arthur, is guilty of capital murder, then the form of your verdict may be as follows: "We the Jury, find the Defendant, David Allen Arthur, guilty of capital murder." If you find the Defendant, David Allen Arthur, not guilty of capital murder but guilty of the lesser included offense of murder then the form of your verdict may be as follows: "We, the Jury, find the Defendant, David Allen Arthur, guilty of murder." Write your verdict on a separate sheet of paper. It does not need to be signed by you.

¶23. Although robbery was not separately charged in the indictment, according to the plain language of § 99-19-5, the jury is allowed to find Arthur guilty of any offense, "the commission of which is necessarily included in the offense with which he is charged in the indictment . . . ." The indictment specifically charged capital murder predicated upon the underlying felony of robbery. Robbery must, therefore, necessarily be found in order to sustain a finding of capital murder under this indictment.

¶24. This Court has addressed lesser included offenses, such as kidnaping, in the case of *Cannaday v. State*, 455 So. 2d 713, 724-25 (Miss. 1984). This Court in *Cannaday*, stated that, "[a]ny murder committed during . . . kidnaping would have been capital murder imputed to all three of the perpetrators. To be a lesser included offense, kidnaping would have to be a component of murder. Instead the charge of kidnaping is an underlying felony which elevates the murder charge to that of capital murder." *Id.* Likewise, robbery is not a component of murder. *Ballenger v. State*, 667 So. 2d 1242, 1255 (Miss. 1995).

¶25. However, robbery is an essential component of capital murder predicated upon robbery. In *Ballenger*, this Court also stated that, "[a] lesser included offense instruction should be given, on request, 'if a rational' or a 'reasonable' jury could find the defendant not guilty of the principal offense charged in the indictment yet guilty of the lesser included offense." *Id.* at 1254. (*quoting Mease v. State*, 539 So. 2d 1324, 1329-30 (Miss. 1989)).

¶26. After debating whether to give a separate robbery option in the form of the verdict jury instruction, trial counsel for both sides and the trial judge decided that it was not possible for the jury to find Arthur guilty of robbery alone-only of capital murder or murder. The jury, acting without an option for doing so in the jury instructions, found Arthur guilty of robbery while finding him not guilty of capital murder or murder.

¶27. The rationale of the jury in reaching its verdict is unclear. The jury sent a note to the trial judge after it had started its deliberations which stated:

> If property is removed from a corpse after death, is that considered robbery?

Judge Vollor then responded in the form of a note back to the jury, over Arthur's objection, which read as follows:

> If either Ephraim Stephens, or David Allen Arthur, or both, had the intention to rob Brian McCown before his death, then a wilful and voluntary removal from the corpse after death is considered robbery. Please read this instruction together with the other instructions given.

¶28. After receiving this reply from the judge, the jury returned its verdict finding Arthur guilty of only robbery. We find that there were two possibilities as to how the jury reached this verdict. First, the jury could have believed that Arthur intended only the robbing of McCown but not the killing of him. Following the reply note from the judge, without reading the other jury instructions carefully, the jury could have believed that finding Arthur guilty of robbery was an option. That would be an inconsistent with the law of Mississippi. Miss. Code Ann. § 97-3-19(2)(e) (Rev. 1994 & Supp. 1998) states:

> (2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:
>
> . . . .
>
> (e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnaping, arson, **robbery**, sexual battery, unnatural intercourse with mankind, or in any attempt to commit such felonies.
>
> . . . .

(emphasis added). If the jury believed that Arthur intended the robbing of McCown, even though he did not intend the killing of McCown, he is guilty of capital murder. Here, the jury acquitted Arthur of capital murder, so therefore, if this was the rationale of the jury it could not legally find him guilty of the robbery. If that was the jury's reasoning, it was mistaken, and the conviction cannot be allowed to stand.

¶29. If the jury based its conviction for robbery upon Arthur's having only robbed the corpse, then it chose to believe that Arthur did not participate in or intend the killing take place, did not plan to rob McCown before his death, but was only guilty of robbing the corpse as an afterthought once McCown was dead.

¶30. Mississippi follows the "one continuous transaction" rationale in capital cases. *Pickle v. State*, 345 So. 2d 623, 627 (Miss. 1977). Under this rationale the underlying crime begins where an indictable attempt is reached. Arthur might argue that the one continuous transaction rationale saves him here. That the jury could not find him guilty of robbery after the murder without automatically finding him guilty of capital

murder. That is not so under the theory of the crime that the jury apparently accepted: that the robbery was a total afterthought on Arthur's part. If the robbery was a total afterthought then no indictable attempt ever began until after the victim was dead, therefore, no continuous transaction linking Arthur with the murder.

¶31. The question then becomes, can you rob a corpse? Robbery is defined by statute as follows:

> Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery.

Miss. Code Ann. § 97-3-73 (Rev. 1994).

¶32. This Court in *West v. State*, 463 So. 2d 1048, 1055 (Miss. 1985), held as follows:

> Appellant argues that since nothing was taken from the person or presence of Kirby Phelps before he was murdered there was no robbery and any reference to robbery is error. While appellant correctly states that one of the essential elements of robbery is that the taking must be from the person or presence of another, **the fact that the murder occurred prior to the taking does not lessen the crime**. . . .

(citation omitted & emphasis added). Therefore, under this Court's precedent, robbing a corpse in close proximity to the death of the victim is still robbery in Mississippi. This is consistent with sister jurisdictions:

> *U.S. v. Butler*, 455 F.2d 1338, 1339 n. 1 (D.C.Cir.1971) ("It is settled law of the jurisdiction that a dead man is a 'person' within the robbery statute"); *Frady v. U.S.*, 348 F.2d 84, 106 (D.C.Cir.1965) (the taking of the victim's wallet was robbery whether it was taken before or after he was murdered); *Carey v. U.S.*, 296 F.2d 422, 426 (D.C.Cir.1961) (when the time interval between the injury causing death and the taking of the property is "so short ... it can hardly be said as a matter of law that the act of appropriation was not performed upon a 'person' "); . . . *State v. Myers*, 230 Kan. 697, 640 P.2d 1245, 1250 (1982) (taking of property three hours after victim was killed is a robbery "where the act of force and the taking of the property are so connected as to form a continuous chain of events"); *People v. McGrath*, 62 Cal.App.3d 82, 86, 133 Cal.Rptr. 27, 29 (1976) (the fact that the victim may be dead when the property is taken "does not alter the character of the theft. It is sufficient for the purposes of robbery ... that the murder and taking be part of one continuous transaction"); *Cobern v. State*, 273 Ala. 547, 550, 142 So.2d 869, 871 (1962) ("If the intervening time between the time of the murder and the time of the taking of the property formed a continuous chain of events, the fact that [the victim] was dead when [the defendant] took the property could not absolve the defendant from the crime of robbery"); *State v. Coe*, 34 Wash.2d 336, 341, 208 P.2d 863, 866 (1949) (where the robbery and homicide were all part of the same transaction, "the fact that death may have momentarily preceded the actual taking of the property from the person does not affect the guilt of the appellant in the commission of the robbery").

*People v. Childs*, 615 N.Y.S.2d 972, 975-76 n. 3 (N.Y. Sup.Ct. 1994). Under this possible rationale, the jury's verdict could be affirmed.

¶33. Unfortunately, we cannot read the mind of the jury. We do not know whether it was mistaken as to the law or understood the law and just simply reached a verdict for which it had not been offered a proper form of the verdict jury instruction.

¶34. For these reasons, the judgment of conviction for robbery is reversed, and this case is remanded to the trial court for a new trial on the charge of robbery alone.

¶35. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN, P.J. BANKS, SMITH, MILLS AND WALLER, JJ., CONCUR. BANKS, J., CONCURS WITH SEPARATE WRITTEN OPINION. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

BANKS, JUSTICE, CONCURRING:

¶36. I agree with the result to reverse and remand reached by the majority in this case. I write separately, however, to fully express my view concerning the reasons for remand.

I.

¶37. It is my view that a conviction of robbery is supported by the evidence before the jury. Additionally, the jury was instructed on the elements of robbery as well as the elements of capital murder. Arthur cannot complain that the same evidence upon which the jury verdict for robbery was based would have supported a conviction for capital murder. *Hubbard v. State*, 437 So. 2d 430, 438 (Miss. 1983). Where the record contains evidence sufficient to support a conviction of murder, the defendant cannot complain about a lesser finding. *Id*. This Court has held many times that the fact that the evidence supports the greater offense gives no grounds for reversal of a conviction of a lesser offense, even where an instruction on the lesser offense would not have been authorized by the evidence. *Grace v. State*, 379 So. 2d 540, 542-43 (Miss. 1980). It follows, therefore, that this conviction should not be reversed upon the ground that is was illogical for the jury to convict Arthur of robbery and not also convict him of capital murder.

¶38. The decision to reverse and remand, however, is compelled because the conviction of robbery is infected by error that lies in the instruction which allows the jury to attribute Stephens' pre-mortality intent to rob to Arthur. In my view, that instruction was in error and justifies remand for a new trial on the issue of robbery. To be clear, our "continuous transaction" doctrine as applied to robbery requires the existence of the intent to rob at a point prior to the death of the victim. *Duplantis v. State*, 708 So. 2d 1327, 1342 (Miss. 1998). Our aiding and abetting precedent requires a knowing participation. *West v. State*, 233 Miss. 730, 103 So. 2d 437, 439 (1958); *Gibbs v. State*, 223 Miss. 1, 77 So. 2d 705, 707 (1955). If Arthur knows of no intent to rob, Stephens' uncommunicated intent may not be attributed to him. *Id.* at 706 (criminal intent of direct actor must be shared). *See also People v. DeJesus*, 507 N.Y.S. 2d 144, 145(N.Y. App. Div. 1986). The instruction that if either of them formed an intent to rob prior to the death of the victim a conviction could be had against the other is error, requiring reversal of the conviction and remand for a new trial.

II.

¶39. In addition to the instruction error, to the extent that Arthur claims Stephens had a propensity to

violence, which he states gives rise to a duress defense for his part in this affair, such evidence should have been admitted. *See **West v. State***, 1998 WL334717,*17-19 (Miss. 1998) (discussing the defense of duress). Duress may be valid defense to the crime of robbery. ***Id.*** Indeed, Arthur claims that he did not have the intent to either rob or murder, that he did neither, and that such acts as he did perform were the product of his fear of Stephens. On remand, the trial Court should carefully consider whether there is a viable claim in this regard and the relationship to that claim of what Arthur knew about Stephens.

McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶40. I dissent from the decision to remand for trial on the simple robbery issue. There is no reason to remand the case. The case is over. The indictment was for capital murder, not robbery. Arthur was acquitted on the capital murder charge. ***See Harris v. State***, 723 So. 2d 546, 549 (Miss. 1997). Further, "the underlying felony in a felony-murder is by definition included in the greater offense and may not be punished separately. This does not mean it is a lesser included offense which requires a separate jury instruction."***Ballenger v. State***, 667 So. 2d 1242, 1254 (Miss. 1995). In the instant case, the majority specifies that robbery was the underlying felony of the murder. This Court fails to consider ***Doss v. State***, 709 So. 2d 369 (Miss. 1997), in which we cited ***Ballenger*** and stated that as the underlying felony in a charge for capital murder, robbery is not a component of murder and therefore is not a lesser-included offense to that murder charge. ***Id.*** at 377. Accordingly, I dissent as to the rationale and the decision to remand.