### DAVE SANDERS v. THE STATE.

No. 3902.   Decided May 27, 1908.

**Assault With Intent to Rob—Insufficiency of the Evidence—Specific Intent.**

Where upon trial of assault with intent to rob, the evidence did not show a specific intent to rob, the same was insufficient, the burden being on the State.

Appeal from the District Court of Erath.   Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of assault with intent to rob; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—The appellant was indicted in the District Court of Erath County for assault with intent to rob one Arthur Fleming by putting him in fear of life and bodily injury. He was convicted on trial and his punishment assessed at confinement in the penitentiary for two years.

The charge of the court is not subject to any criticism but fairly and clearly presents every issue arising under the evidence. We have been led to believe, however, by a careful inspection of the record that the testimony is wholly insufficient to sustain the verdict and for this reason only the case should be reversed. Arthur Fleming testified, in substance, that he was in Dublin on the 22nd day of September, 1907, and while there met one Frank Snodgrass; that he came out of a restaurant near the Red Wagon Yard and saw Snodgrass sitting on the outside of this restaurant close to the door and that Snodgrass, when he, Fleming, came out of the restaurant saw him with $9.90 in his hand; that he talked to Snodgrass about going to Oklahoma to pick cotton; that sometime after this he saw Snodgrass again at the Frisco depot where he, witness, had

gone to wait for the train for Stephenville; that he and Snodgrass talked for sometime and at Snodgrass' invitation they went up the railroad to see a negro woman; that after they had gone some distance, appellant came up behind him and Snodgrass and asked Snodgrass what he was doing at that time of night. Fleming says he told Sanders that he was going to Stephenville; that at this time Sanders and Snodgrass stepped out behind a car and were talking about something; that he, witness, then told Snodgrass to come and go back to the depot that he did not want to miss the train; that he started on ahead and Snodgrass and appellant came on behind him and appellant came up and hit him on the head with a plank about as wide as his hand and about four feet long; that he, witness, then ran on down the track; that at this time Snodgrass circled around and got hold of him and told him not to run up there that some one of them would shoot him, witness, and that he then asked Snodgrass what that man hit him for; that he did not see which way appellant went after he hit him; that he was running pretty fast and was scared after he was hit and thought he, appellant, was going to rob him and that he did not see appellant any more that night. The only additional evidence offered by the State was a written statement made by appellant and identified by one Arnold. This statement was to the effect that on the night in question, Snodgrass came to the central pump house where he, witness, was working and told him that he had found one of the boys that had been talking about his sister; that they went to near the Frisco depot and Snodgrass showed Fleming to him and said, "Yonder he is"; that he, witness, started at the time to get a stick, but Snodgrass said he would get Fleming off to the stock pen; that in the meantime he went home and told his mother what he was going to do and got a stick; that he then went back near the turntable and waited for Snodgrass and Fleming, but did not hit him there because he saw the night watchman at the compress; that Fleming then went on to the depot and he soon overtook the parties and he then asked them what there were doing there; that Snodgrass and Fleming walked on down the track and he followed and struck Fleming twice with the stick and then went back to the pumping house where he had been at work; that soon after this Snodgrass came to where he was working and told him that Fleming had said nothing about his sister, but that he, Snodgrass, had got his money and wanted to divide the money with him, and that he, appellant, told him that he did not want any of it and would tell Jim White if he did not give the money back; that he did not know anything about the robbery and struck Fleming because Snodgrass had told him that he had talked about his sister. J. W. White, city marshal of Dublin, testified that when they had appellant up as a witness in connection with the charge against Snodgrass, that he testified that Snodgrass came to the pump house on the night before and counted the money and called his attention to it; that the officers had not supposed at that time that appellant was connected with the matter and that was about all he said about it. The evidence does not

disclose any connection, except the most casual sort, between appellant and Snodgrass. The witness Fleming does not testify to the fact that he was robbed, and if he was robbed, it appears only in the most incidental way in the record. Of course, the burden was on the State to show, beyond reasonable doubt, that appellant assaulted Fleming with the specific intent to rob. This has not been shown by the evidence, nor does the testimony make a case where such deduction is either necessary or reasonable. We think the testimony is not sufficient to show appellant guilty of the offense of assault with intent to rob and for this reason only, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*