# June, 1924.

Fred Mortimer v. The State.

No. 8424.   Decided June 4, 1924.

1.—Assault to Rob—Charge of Court—Specific Intent.

Where, upon trial of assault with intent to rob, the evidence raised the issue of specific intent, the request made to the court that he instruct the jury that there could be no conviction unless they found from the evidence, beyond a reasonable doubt that in making the assault defendant had the specific intent to commit robbery, the refusal thereof is reversible error. Following: Sanders v. State, 53 Texas Crim. Rep., 613.

2.—Same—Indictment—Aggravated Assault.

Under the present indictment this court is inclined to believe that the extent to which the State might insist upon a conviction on the facts in the instant case is for aggravated assault, and the judgment must, therefore, be reversed and the cause remanded.

Appeal from the District Court of Eastland.   Tried below before the Honorable Geo. L. Davenport.

Appeal from a conviction of assault with intent to rob; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. Lee Cearley*, for appellant.

*Tom Garrard, Attorney* for the State, and *Grover C. Morris*, Assistant Attorney for the State.

MORROW, Presiding Judge.—Appellant was indicted for and convicted of an assault with intent to rob; punishment fixed at confinement in the penitentiary for a period of five years.

Appellant entered the store of the witness Fair and indicated a desire to purchase some second-hand clothes.   According to the witness, he expressed his doubt touching his possession of clothes that would fit the appellant.   The appellant then remarked: "I have got to have one somehow, or remarked something like that."   The witness

walked over to another part of the store and lifted his hand to reach for a suit. According to his testimony and using his own language, he said:

"I felt like I had hold of an electric wire. . . . and before I could do anything, it seemed to me like two more shots rang out. I thought they were shooting me in the back, and I turned to try to get away, and I got a smack right here in the forehead. I began struggling to get away then and he got me down and was choking me, and I grabbed his fingers this way and pushed his fingers back and jerked loose from him and jumped down the stairway and out the door, and he ran after me and when we got outside he ran away."

The witness claimed that the appellant shot him in the back three times and once in the forehead. The witness was taken to the hospital and there he also claimed that he was shot a number of times. In fact, he was not shot but had been struck on the head with some object.

In the store near the place where the altercation took place was a piece of iron pipe. Appellant testified that he was a worker in the oil fields; that he had injured his working trousers, and desiring to buy another pair, he went into the store of the witness Fair. While looking through the clothes, he indicated that there was a suit which he would like to buy. Fair said that the suit was not for sale, and also told the appellant that he did not believe that he wanted to buy any clothes; that he looked like a "damn tramp" and started to walk towards him. Appellant walked away, Fair following him, and seeing a piece of iron pipe, he grabbed it, "hauled off and let go." Fair grabbed the appellant around the waist. Appellant hit him with the iron pipe on the back of the head, tripped him and ran. Upon the subsequent arrest of the appellant, there was found upon his person a piece of rope or twine, also a can of pepper. Appellant gave the name of Joe Jackson when arrested. It was shown that he had ten dollars in his possession. He explained that the rope or string was used to carry his clothes with; that is, he went to work in one suit of clothes and worked in another, and the rope or string was used in tying up the bundle of clothes while going to and from his work; that he gave the assumed name for the reason that he did not want his mother to read in the papers that he had been arrested; that he picked up the box of pepper along the road, and seeing that it was full, he put it in his pocket. No goods were removed from the store, and none were demanded by the appellant.

The court instructed the jury on the law of assault with intent to rob and upon the law of self-defense. A request was made that the court instruct the jury that there could be no conviction unless they found from the evidence beyond a reasonable doubt that in making the assault appellant had the specific intent to commit robbery. If

the prosecution for an assault with intent to rob is maintainable under the facts, a charge instructing the jury that to justify a conviction there must be proof of his specific intent to rob should have been given. Sanders v. State, 53 Texas Crim. Rep., 613.

An indictment charging an assault with intent to murder would seem to have been more appropriate. That count in the indictment, however, was abandoned. Under the present indictment, we are inclined to believe that the extent to which the State might insist upon a conviction on the facts before us is for an aggravated assault. We understand that an indictment charging an assault with intent to rob would include the lower grades of assault. Art. 772, C. C. P. The judgment is reversed and the cause remanded.

*Reversed and remanded.*