# FEBRUARY 16, 1944

Frank Alaniz v. The State.

No. 22737. Delivered February 16, 1944.

The opinion states the case.

*Roy A. Scott* and *Leo N. Duran,* both of Corpus Christi, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

The conviction is for the offense of robbery. The punishment assessed is confinement in the State penitentiary for a term of seven years.

Appellant challenges the sufficiency of the evidence to support his conviction. The State's evidence shows that on the night of December 20, 1942, W. H. Laweller (who was a sailor), Manuel Falcon, Jr., Atanacios Perez, Jr., and appellant met at a beer tavern near the Fiesta grounds in the town of Kingsville. Perez had on a soldier's uniform. Laweller invited them to join him in a bottle of beer, which they did and for which he paid. After they had finished drinking the beer, they went to the Fiesta, where they walked over the grounds for some time; from there they went into an alley ostensibly for the purpose of looking for a Mexican girl or girls. After they had walked some distance down the alley, because of the conduct of his companions, Laweller became suspicious and turned to go out of the alley. Laweller was attacked by his companions; all of them struck him rendering him unconscious. When he regained consciousness several hours later his companions were gone, likewise his pocket book and the contents, sixteen dollars. After being arrested and while confined in jail, appellant made a voluntary confession in which he admitted that they struck the sailor, knocked him down and while he lay unconscious upon the ground Perez said " 'Let's go; I have got him.' Perez meant by saying 'I have him' that he had the sailor's money." The sixteen dollars were divided among Perez, Falcon and appellant.

The State used Falcon as a witness and he testified that he, appellant and Perez all struck the sailor and that Perez searched him and got his pocket book and money, which was divided among the three of them. During the fight Perez lost his cap and they started away from the scene without it, but Perez went back and got his cap, but he had already gotten the sailor's bill fold before he (Perez) went back for his cap.

Appellant testified in his own behalf. He repudiated the confession and testified that it was not true; that he made it

because he was beaten with a stick by one of the officers until he agreed to make the statement referred to. He further testiled that he, Falcon and Perez had no conversation or agreement to rob the sailor; that he struck the sailor because he had made some disparaging remarks about Mexican soldiers; that he was a Mexican and resented the accusation; that Perez and Falcon each struck the sailor; that after they had knocked him down, they left him lying in the alley and went away; that after they had gone about "as far away as from here to the wall, the back of the court room" Perez, who had lost his cap in the combat, went back to get it; that when he returned they went on their way for about two blocks.

From this point we quote appellant's testimony:

"The first I knew about Perez taking the bill-fold was when we were about two blocks away. He asked me if I lost a pocketbook and I told him I didn't have one, and then he asked Falcon if he had lost one, and Falcon said he hadn't, and then he searched himself and found he had his, and then he said 'Well, I have this other one; maybe it is that sailor's.' I asked him, 'Where did you find it?', and he said that when he went back after his cap he had found it laying by the side of the sailor, laying on the ground by the sailor, where the fight was.

"Then Perez said he was going to divide the money with us, and he started out giving a dollar to each of us until the money was all gone. That is the first time I saw the bill-fold. I had not had any agreement at any time to take any money from the sailor, with either Falcon or Perez."

It will be noted that if the jury believed the State's evidence it is ample to support the judgment.

Appellant urges that unless the *assault* upon Laweller was made with intent to rob that appellant could not be guilty of robbery, and in paragraphs 1, 6, 8, 9, 10 and 11 of the objections to the charge given he complains because the court did not instruct the jury in substance that if appellant and his companions assaulted Laweller because he had made disparaging remarks concerning Mexican soldiers, which appellant and his companions resented, and not with intent to take Laweller's property, appellant would not be guilty of robbery notwithstanding such property was taken after Laweller had been rendered unconscious by the assaults.

This is not the law and the court did not err in omitting such instruction. In support of his position appellant refers us to Smiley v. State, 87 Tex. Cr. R. 528, 222 S. W. 1108; Long v. State, 47 Tex. Cr. R. 296, 83 S. W. 384; Sanders v. State, 53 Tex. Cr. R. 613, 111 S. W. 157; Gage v. State, 124 Tex. Cr. R. 679, 65 S. W. (2d) 306. It will be noted that in each of the cases mentioned the prosecution was for *"assault with intent to rob."* In such prosecutions the intent with which the assault is committed becomes vital by reason of the very language of the statute itself. See Art. 1163, P. C. It does not follow that the same is true where property is actually and fraudulently taken from the person or possession of another, with intent to appropriate it, where the taking is made possible by assault, or violence, etc. This court has frequently said that robbery is an aggravated case of theft because in each instance the fraudulent taking of property with intent to appropriate it is the gravamen of the offense. See definition of robbery, Art. 1408, P. C., and definition of theft, Art. 1410, P. C. The distinction between the two offenses lies in the antecedent assault or violence or putting in fear of life or bodily injury necessary to constitute the offense of robbery.

If appellant and his companions, without a previous intention to take Laweller's money, assaulted him because of some insulting remark regarding Mexican soldiers and reduced him to a state of unconsciousness and then *took his money with the fraudulent intent* to appropriate it to their own use the offense is robbery. In People v. Jordan et al, 303 Ill. 316, 135 N. E. 729, the Supreme Court of Illinois had this same question under consideration. There accused was charged with robbing Merl. It was claimed by accused that the attack on Merl was not made for the purpose of robbery, but because of previous trouble between them, and that the fight was not with the intention of taking Merl's money, but that the taking was an afterthought. The court said, "If, as the result of a quarrel, a fight occurs, in which one of the parties is overcome, and the other then without having formed the intention before the fight began, takes the money of the vanquished one, the offense committed is robbery."

The same principle is announced in Tones v. State, 48 Tex. Cr. R. 363, 88 S. W. 217, and in Wynn v. Commonwealth, a Kentucky case, reported in 122 S. W. 516. In the latter case an officer had arrested parties for drunkenness and disorderly conduct. They were searched by the officer who took from them money. The court said the officer had a right to search the prisoners and if he obtained money from them it was his duty to return it to them when they were released, and then added, "If,

however, after making the arrest, he took advantage of the duress under which such arrest placed them, and by force or by putting them in fear took from them money in their possession, feloniously intending at the time to convert it to his own use, his act in so doing was robbery."

The court's charge was criticised in paragraph No. 7 of appellant's objection to the charge which has given us much concern. Said paragraph reads as follows:

"7. Defendant further excepts and objects to the Court's main charge because the Court does not affirmatively apply the law to the facts as introduced in evidence in this case, in that the testimony of the defendant shows that one Perez found the bill-fold, which bill-fold was introduced in evidence, on the ground beside the sailor, and that the defendant did not know that said Perez had taken the purse until several minutes after the said assault had taken place, and the jury should be instructed that if·they believed such evidence, or if they had a reasonable doubt thereof, they should acquit the defendant and find him not guilty of the offense charged in the indictment."

Adverting to appellant's testimony, the substance of which has heretofore been set out, it appears that the objection last above quoted is squarely predicated on said evidence. In view of other evidence in the record the trial court may have placed little credence in the testimony given by appellant, but it raised an issue of fact which the jury alone was entitled to pass on. If there had been no previous agreement or understanding among appellant and his companions to rob Laweller, and after the fight was over they had started away and Perez returned to the scene of the fight to recover his cap, and then discovered the bill fold lying beside the body of Laweller, and took possession of it without appellant having any knowledge thereof, or any connection with the taking by Perez, appellant would not be guilty of the offense of robbery although he later accepted part of the contents of the bill fold. Likewise, in the absence of an understanding to rob Laweller, if he lost his bill fold in a fight with appellant and his companions, and Perez, upon returning for his cap, discovered the bill fold lying on the ground near the unconscious form of Laweller, and Perez took possession of the bill fold, not with the fraudulent intent of appropriating it or its contents to his own use, but took it in good faith believing it belonged to either appellant or Falcon, neither Perez nor appellant would be guilty of the offense of robbery although they later appropriated the contents, because the fraudulent intent to appropriate the property was wanting at the time of the original taking.

6

The court should have responded to the 7th paragraph of the objections to his charge and given some appropriate instruction to cover the defensive issue raised by appellant's testimony.

For failure to do so, the judgment must be reversed and the cause remanded, and it is so ordered.