Herbert S. CAREY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16170.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 19, 1961.

Decided Oct. 12, 1961.

Petition for Rehearing En Banc Denied En Banc Nov. 14, 1961.

Mr. Jack Marshall Stark, Washington, D. C. (appointed by this court), for appellant.

Mr. Robert Brewer Norris, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Charles T. Duncan, Principal Asst. U. S. Atty., and Joseph A. Lowther, Asst. U. S. Atty., were on the brief, for appellee. Mr. Oliver Gasch, U. S. Atty., at the time the record was filed, and Mr. Carl W. Belcher, Asst. U. S. Atty., at the time the record was filed, also entered appearances for appellee.

Before WILBUR K. MILLER, Chief Judge, and DANAHER and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

Appellant was tried for first degree murder and robbery.[1] He was convicted of manslaughter and robbery, from which conviction he appeals.

The basic factual pattern is not disputed. On the evening of May 19, 1960, appellant and Mrs. Beulah Butler, his landlady, whom he had known and been friendly with for several years, became involved in an argument over appellant's common law wife. Apparently, all three had been drinking that day. Mrs. Butler informed appellant that his wife was lazy and would have to get out of the house and stay out. When appellant retorted that his wife would stay as long as he stayed, Mrs. Butler struck him with a bicycle pump, appellant alleged, causing lacerations of the head. He thereupon threatened to kill her but, at that time, made no overt move to carry out his threat. Mrs. Butler went downstairs and, shortly thereafter, appellant and his wife followed. After renewing his threat to kill her, appellant produced a knife from his pocket and stabbed Mrs. Butler one time. She died as a result of this wound. Appellant and his wife carried Mrs. Butler's body to a couch in the dining room, where appellant removed some money from her dress. When appellant was arrested later in the evening, he freely admitted stabbing Mrs. Butler but expressly denied any intention of robbing her.

At the trial, all the evidence pointed to the fact that Mrs. Butler was dead when appellant removed the money from her person. Appellant testified that he thought Mrs. Butler was only unconscious and that he took the money merely to keep it from becoming bloodstained.

Appellant's first argument on appeal revolves around his defense of insanity. Dr. Odenwald,[2] a private psychiatrist

1. Violations of Title 22 D.C.Code §§ 2401 and 2901.

2. Originally, the court denied appellant's motion for a mental examination by a private psychiatrist but, during the trial, authorized the appointment of a psychiatrist at the expense of the Government, and Dr. Odenwald apparently was select-ed by appellant. The appointment was made at the close of court on Thursday of the trial and appellant was examined by Dr. Odenwald in the period intervening before court reconvened the following Monday. Dr. Odenwald testified that he had the record of appellant's background, and that his personal examination of appellant took about two hours.

called by appellant, testified that appellant was suffering from "dormant alcoholic psychosis," which the doctor classified as a mental disease. He further testified that the crimes for which appellant was indicted were products of that disease.

Dr. Margaret Mercer, Assistant Chief of the Psychology Branch of St. Elizabeths Hospital, who had conducted certain psychological tests on appellant designed to determine his intelligence, personality and emotional equipment, was called by appellant and testified that he was an "emotionally unstable personality." She testified that she did not see in appellant any mental disease or defect, in the usual sense of the words.

Appellant's mother and appellant testified about certain symptoms indicating mental disturbance in appellant: headaches, dizzy spells and vomiting fits. Appellant also testified that he had been drinking heavily since his discharge from the army in 1946.

■ Appellant having introduced evidence that on May 19, 1960, he was suffering from a mental disease or defect, it became the duty of the Government, at the close of appellant's case, to prove appellant sane beyond a reasonable doubt at the time of the commission of the crimes charged against him. Davis v. United States, 1895, 160 U.S. 469, 16 S. Ct. 353, 40 L.Ed. 499.

■ The Government placed on the stand three psychiatrists, who, on the basis of a ninety-day pretrial examination of appellant at St. Elizabeths Hospital ordered by the court, testified that in their opinion appellant had not been suffering from any mental disease or defect on the evening of Mrs. Butler's death.

Appellant contends that the testimony of these Government psychiatrists should have been stricken from the record by the trial court or, in the alternative, should have been considered of such insubstantial weight, when compared with the psychiatric evidence offered by appellant, that reasonable men must necessarily

have had reasonable doubt as to appellant's guilt. On the basis of either of these contentions, appellant argues that the trial court erred in denying his motion for a directed verdict of not guilty by reason of insanity.

Reduced to its essence, appellant contends that the psychiatric examination given him at St. Elizabeths Hospital was not adequate or thorough enough to meet the standards set down by this court for such examinations. Winn v. United States, 1959, 106 U.S.App.D.C. 133, 270 F.2d 326; Calloway v. United States, 1959, 106 U.S.App.D.C. 141, 270 F.2d 334.

The record shows that there was presented to the Government psychiatrists a substantial medical and personal history of appellant and that there was sufficient observation upon which they could rationally base their conclusion that appellant was not devoid of mental capacity on May 19, 1960. Apart from the psychiatric interview given appellant toward the end of his ninety-day period of observation, at which all three of the Government psychiatrists were present and at which appellant was questioned, the psychiatrists considered appellant's general background, his army record and his arrest record, the psychological reports prepared by Dr. Mercer, and an electroencephalographic report, as well as X-rays and the results of laboratory examinations. Altogether, these sources of information form a solid mass of evidentiary data; they certainly do not add up to, as appellant contends, a wisp of casual observations.

The technique of the examination of persons sent to St. Elizabeths as to competency to stand trial and as to mental condition at the time of an alleged offense, as was followed in the case of the present appellant, is substantially as follows:

During the time fixed by the court for such examination (usually sixty or ninety days), the accused is placed under observation by various staff members. Dr. Platkin, one of the doctors at St. Elizabeths, testified in effect that when

the patient first comes into the hospital he is interviewed extensively by a doctor and a report is made of that interview. The patient is assigned to a ward, where his behavior is constantly observed and notes made of any unusual or remarkable behavior or any unusual situations in which he might have been involved. If the patient has been in the army or previously hospitalized, those organizations are written to for information, which is placed in the patient's file. He is then given a standard physical examination for any abnormalities. Laboratory examinations are ordered, including blood and urine examinations and X-rays; special examinations may be ordered if deemed advisable. Psychological examinations are ordered and the patient is then periodically examined on the ward. A record is made of his behavior if there is anything out of the ordinary to report. The patient is observed by one or another doctor assigned to make periodic rounds of the wards; he is not always seen personally but inquiry is made about his condition, and attendants on the ward call anything unusual to the attention of the doctors. Eventually, a date is set for a staff conference, at which a staff doctor presents a summarization of all the material which has been collected. A doctor then is actually assigned to the patient, to do what is called "a case study." This doctor sees the patient some time before the final conference for reevaluation, at which the patient is again questioned and observed and all the available material is again summarized and synthesized. It is from this combined mass of information that the opinions of the doctors are determined.

We think that the testimony of the doctors taking part in an examination given under accepted psychiatric technique, and based upon demonstrable evidentiary data, cannot be said to be of so little value, as contended by appellant,

as to require the exclusion of that testimony or to require that the trial court direct a verdict of not guilty by reason of insanity.

We think the trial court was not in error in denying appellant's motion to strike the testimony of the Government psychiatrists that appellant was not suffering from any disease or defect of the mind at the time he stabbed Mrs. Butler, that testimony being founded upon competent evidentiary data, as disclosed by the record. Nor was it error on the part of the trial court to deny appellant's motion for a directed verdict of not guilty by reason of insanity, as the evidence presented at the trial relating to appellant's mental condition at the time of Mrs. Butler's death legitimately raised a disputed issue of fact properly determinable by the jury. Jones v. United States, 1960, 109 U.S.App.D.C. 111, 284 F.2d 245.

Appellant advances several arguments in support of his contention that the trial court committed prejudicial error in certain respects. He argues that the initial denial of his motion for an independent mental examination by a psychiatrist of his own choice forced upon him the intolerable dilemma of either waiving his constitutionally protected right against self incrimination by submitting to an examination conducted by psychiatrists at St. Elizabeths Hospital, or foregoing his opportunity to show himself not guilty by reason of insanity because he could not afford to engage a private psychiatrist. The answer to this argument is that appellant was afforded a psychiatrist, note 2 supra, who testified fully and favorably to appellant, as we have noted. Moreover, the psychiatrists from St. Elizabeths testified only as to the mental condition of appellant. Surely they were to be permitted to do so. § 14–308 D.C.Code (Supp.; VIII, 1960); Parker v. United States, 1956, 98 U.S.App.D.C. 262, 235 F.2d 21.[3]

---

3. Cf. Edmonds v. United States, 1958, 104 U.S.App.D.C. 144, 148, 260 F.2d 474, 478, where we pointed out that, if the Government shall have used "non-statutory procedure," statements by the accused to an examining psychiatrist are not to be admitted against him on the issue of guilt. Here the psychiatrists from St. Elizabeths did not testify with reference to the issue of guilt.

426

Appellant also contends that the instructions on insanity given to the jury were erroneous in that they reflected the trial court's opinion that appellant's evidence of insanity was of minimal quality and quantity, and that the instructions misled the jury as to the Government's duty of proving appellant sane beyond all reasonable doubt. There is no merit in either of these contentions. When considering instructions, the charge to the jury must be taken as a whole. McFarland v. United States, 1949, 85 U.S.App.D.C. 19, 174 F.2d 538; Kinard v. United States, 1938, 69 App. D.C. 322, 101 F.2d 246.

In the present case, at the very beginning of its instructions on insanity, the trial court squarely placed on the Government the duty of proving appellant's sanity beyond a reasonable doubt. This burden was emphasized repeatedly in the charge by the trial judge. The court's instructions relating to the procedural aspect of the defense of insanity, when read in context and as a whole, clearly were not prejudicial to appellant. The instructions given in this case were almost identical with those approved by this court in Martin v. United States, 1960, 109 U.S.App.D.C. 83, 284 F.2d 217.

Appellant seeks to have his robbery conviction set aside, arguing that, assuming the intent of taking Mrs. Butler's money did not occur until after she was dead, as a matter of law he could not be guilty of the crime of robbery when he removed the money from her blouse. In other words, he argues that unless the necessary *mens rea* antedates, or at least coincides with, the death of the victim, robbery is legally impossible, a corpse not being a "person" as that term is understood in the robbery statute.

In the somewhat analogous case of People v. Jordan, 1922, 303 Ill. 316, 135 N.E. 729, the intent to appropriate was claimed to have been formed after the victim had been knocked unconscious in a street fight. In rejecting the contention that such a situation did not add up to robbery, the Illinois Supreme Court stated:

"If, as the result of a quarrel, a fight occurs, in which one of the parties is overcome, and the other then, without having formed the intention before the fight began, takes the money of the vanquished one, the offense committed is robbery." 135 N.E. at page 730.

See also to the same effect State v. Covington, 1930, 169 La. 939, 126 So. 431; and Alaniz v. State, 1944, 147 Tex.Cr. R. 1, 177 S.W.2d 965, citing Jordan, supra, with approval.

In the present case, the time interval between the stabbing of Mrs. Butler and the taking of her money was so short that it can hardly be said as a matter of law that the act of appropriation was not performed upon a "person." In this connection it is well to note also that appellant himself testified that when he removed Mrs. Butler's money he was under the impression that she was only unconscious, and not dead.

Appellant applied deadly force to Mrs. Butler, apparently rendering her permanently unconscious of what took place shortly thereafter with respect to her money. The trial court properly charged the jury as to specific intent to steal being a necessary prerequisite to the crime of robbery. At the time her money was taken, in the particular circumstances of this case, Mrs. Butler, dead or not, was still a "person" as that term is understood in the robbery statute of this jurisdiction. The present robbery statute in the District of Columbia is an expansion upon the common law crime of robbery. Neufield v. United States, 1941, 73 App.D.C. 174, 118 F.2d 375, certiorari denied Ruben v. United States, 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199. Under our statute, the taking by sudden, stealthy seizure or snatching without violence or putting in fear, without the victim being conscious of the taking, is robbery. See Turner v. United States, 1926, 57 App.D.C. 39, 40, 16 F.2d 535, 536. There this court said:

"This conclusion finds support in the fact that statutes have been passed in many jurisdictions denouncing larceny from the person as an aggravated form of larceny, and prescribing more severe penalties therefor, although retaining the name of 'larceny' for the aggravated offense. The District Code contains no such provision, but accomplishes the same purpose by dealing with larceny from the person under the same classification as common-law robbery."

We have examined appellant's other contentions and find no error affecting substantial rights.

Affirmed.