463 So.2d 1048 (1985)
Tony Wells WEST a/k/a Samuel Tony Wells
v.
STATE of Mississippi.
No. 55443.
Supreme Court of Mississippi.
January 23, 1985.
*1050 David M. Sessums, Varner, Parker & Sessums, Vicksburg, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by William S. Boyd, III, and Marvin L. White, Jr., Sp. Asst. Attys. Gen., Jackson, for appellee.
EN BANC.
WALKER, Presiding Justice, For the Court:
Tony West was convicted of the capital murder of Kirby Phelps and sentenced to be executed. West was tried in the Circuit Court of Warren County. West appeals his conviction and sentence.
On December 13, 1982 West and Kenneth Avery Brock robbed and killed Dr. Charles Scudder and Joseph Odum in Trion, Chattoga County, Georgia. West and Brock took their victims' jeep and headed west along Interstate Highway 20. At a rest stop at Bovina, Warren County, Mississippi they stopped to get some sleep. They were out of money and needed new transportation which was less distinctive than a jeep with a star on each side. Kirby Phelps, a 26-year-old Navy lieutenant, had also picked the Bovina rest area to stop and sleep on his way from Jacksonville, Florida to his mother's home in Oklahoma City, Oklahoma.
On the morning of December 15, 1982 West and Brock woke up and saw Phelps' car parked near them. They got out of the jeep and "jumped" Phelps who was asleep in his car. Brock held a gun on Phelps while West put handcuffs on him. The gun and handcuffs had been taken in the Georgia robbery. West then lead Phelps into the woods with the gun Brock had used. Brock unloaded the things from the jeep into Phelps' Toyota.
West's version of what happened next was that he only intended to handcuff Phelps to a tree but that when West undid one of the handcuffs Phelps came at him and West panicked and shot him. Phelps was shot three times in the head  once in the chin, once in the back of the head and once behind the right ear.
Phelps' body was found 200 yards in the woods behind the rest area later the same morning by two men who were searching for civil war relics. The jeep taken from *1051 Georgia was later found abandoned 12 miles south of Tallulah, Louisiana.
Brock used Phelps' identification to pawn the car's stereo equipment and other things of value at a pawn shop in Austin, Texas.
Brock and West split up, and West went to Chattanooga, Tennessee. On the evening of December 25, 1982 West voluntarily surrendered to local police authorities. At the time of his arrest West had on a suit and pair of shoes which were identified as belonging to Phelps.
West was turned over to the sheriff of Chattooga County, Georgia. Chattooga County was where the deaths of Odum and Scudder occurred. West gave two statements to the Georgia authorities, one on December 25 and one on December 27, in which he admitted the facts as noted above.
After being tried and convicted of the murders of Scudder and Odum in Georgia, West was turned over to Mississippi authorities for his trial in the death of Kirby Phelps. On September 26 the jury found West guilty as charged.
The jury found the aggravating circumstances outweighed the mitigating circumstances and imposed the death penalty.
This case must be reversed.
The appellant makes thirteen assignments of error, two of which specifically relate to references to the murders which occurred in Georgia. The opening statement of the district attorney advised the jury that the appellant had participated in killing two people in Georgia. These killings occurred thirty-six or more hours prior to the killing in Mississippi. Portions of confessions by West were also allowed into evidence which referred to the Georgia killings and robbery.
These two assignments of error will be considered first.
THE LOWER COURT ERRED IN REFUSING TO GRANT A MISTRIAL BASED ON THE COMMENT OF THE STATE IN OPENING STATEMENTS; AND
THE COURT ERRED IN ALLOWING TESTIMONY REGARDING CRIMES IN GEORGIA FOR WHICH HE WAS NOT ON TRIAL.
It is a well settled rule that evidence of other crimes than the one for which the accused is being tried is inadmissible. Mason v. State, 429 So.2d 569 (Miss. 1983); Johnson v. State, 416 So.2d 383 (Miss. 1982); Gray v. State, 351 So.2d 1342 (Miss. 1977).
There are exceptions to this rule. As stated in Blair v. State, 445 So.2d 1373, 1375 (Miss. 1984):
In general, the prosecution is not allowed to show a defendant committed crimes other than the one for which he is on trial. However,
... There are certain recognized exceptions to the rule. Proof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction, where it is necessary to identify the defendant, where it is material to prove motive and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge.

Johnson v. State, 416 So.2d 383, 386 (Miss. 1982), quoting Gray v. State, 351 So.2d 1342 (Miss. 1977).
In Oates v. State, 421 So.2d 1025, 1029 (Miss. 1982), we implicitly extended this rationale to include statements made by the district attorney on opening statement.
We hasten to say, however, that reference to a crime other than that charged in the indictment is not proper in all multi crime situations, but is limited to those closely connected by a sequence of events within a short time span and are so intertwined that one cannot be reasonably extricated from the other.
The rationale of this rule is that the issue before the jury is singular and to allow other evidence would divert the jury's attention *1052 and prejudice the accused. As said in King v. State, 66 Miss. 502, 506, 6 So. 188, 189 (1889):
The general rule is, that the issue on a criminal trial, shall be single, and that the testimony must be confined to the issue, and that on the trial of a person for one offense, the prosecution cannot aid the proof against him, by showing that he committed other offenses. Whart. Cr. Ev., § 104; 1 Bish. Cr. Pro., § 1120 et seq. The reason and justice of the rule is apparent, and its observance is necessary to prevent injustice and oppression in criminal prosecutions. Such evidence tends to divert the minds of the jury from the true issue, and to prejudice and mislead them, and while the accused may be able to meet a specific charge, he cannot be prepared to defend against all other charges that may be brought against him.
In Neal v. State, 451 So.2d 743 (Miss. 1984) this Court held the evidence of two other murders admissible. The State felt that it had a legitimate interest in telling a coherent story of the murder of Amanda Joy Neal. The confession of Neal would have been incoherent unless the complete story were told. Amanda Joy Neal, it could be argued, was killed because she was an eyewitness to the killing of her father. The other victim was also an eyewitness and presumably was murdered to leave no witness to the killing which had occurred immediately before.
In Johnson v. State, 416 So.2d 383 (Miss. 1982) a police officer was killed acting in his official capacity. This Court held that evidence of the burglary and attempted rape of an elderly Walnut Grove resident was properly admitted. The police officer was found soon after the incident lying face down in front of his patrol car about fifteen yards from the home where the break in and attempted rape occurred. This Court held that testimony of the earlier incident was admissible to prove motive and to show identity, and was also admissible as part of the res gestae.
Although the killing of Kirby Phelps occurred within a context of the aftermath of other murders, there was a separation of time and motive which set these events apart. These events were not so interrelated that the killings in Georgia were a necessary part of the story which occurred in Mississippi.
Although Wells and Brock were fleeing the Georgia authorities and used a gun and handcuffs taken from their Georgia victims in the Mississippi killing, there was the independent motive of robbery to explain their actions. The reason for Phelps' murder does not necessarily follow from the prior killings. The story of what happened in Mississippi is not incoherent standing alone and not so intertwined that it could not be separated.
It was unnecessary, prejudicial to the appellant, and contrary to well established law of this State to present evidence of the prior Georgia killings to the jury in this case during the guilt phase of the trial. For this reason this case must be reversed.
Appellant also assigns as error, committed in the sentencing phase of his trial, exhibiting to the jury of the Georgia convictions which recited that appellant had been found guilty of capital murder and sentenced to be executed. Although the part relating to the sentence had been scratched out by the judge, it was nevertheless readable upon close examination.
The error assigned is stated as follows:
THE COURT ERRED IN SENDING STATE'S EXHIBITS A, B, C AND D IN THE SENTENCING PHASE OF TRIAL TO THE JURY SINCE THESE EXHIBITS CAUSED A 10-2 JURY TO KNOW THAT DEFENDANT HAD ALREADY RECEIVED THE DEATH PENALTY IN GEORGIA.
That portion dealing with sentence should have been excised in such a manner that the jury could not determine by examination that the appellant had been sentenced to death. The reason is that if the jury knows that the appellant is already under a sentence of death it would tend to *1053 relieve them of their separate responsibility to make that determination.
This Court has considered the responsibility of the jury in the context of remarks by the prosecution that the decision of the jury is not the "last word" on the sentence of the accused.
In Wiley v. State, 449 So.2d 756, 762 (Miss. 1984) the Court said:
The role of juror in a capital murder trial brings with it an awesome responsibility. Fortunately, few of us are ever required to make the decision whether to end another human being's life; however, that is precisely the question confronting jurors following a guilty verdict in a capital case. Such decision is so ominous that it becomes almost trite to attempt to assess the introspection, concern, and solemnity that accompany it.
Because of the importance of the jurors' deliberations we must be cautious in avoiding any actions which tend to reduce the jurors' sense of responsibility for their decision. They must not be permitted to look down the road for someone to pass the buck to. Arguments by a prosecutor which relate to reviewability of a jury's verdict have exactly this dangerous effect. Jurors faced with the protentous duty of deciding an accused's fate will take comfort in the fact of review. They may view their role as merely advisory, a view that can prove fatal to an accused.
Under our law the jury is the sole player in the judicial process who may vote to send an accused to die. They alone make that determination and all review is then conducted with a presumption of its correctness. While a jury is not literally "the hangman," only they may supply the hangman's victims. All notions of justice require that the jurors as individuals, and as a body, recognize and appreciate the gravity of their role.
Also, in Williams v. State, 445 So.2d 798, 812 (Miss. 1984) the Court said:
Sentencing a citizen to death is the responsibility vested by law in our juries. Any matter presented to such jurors which would allow them to shift their awesome responsibility to others is simply contrary to our law. That we have limited powers of appellate review in no way changes the fact that the primary and ultimate sentencing power is vested alone in the jury. We hold, therefore, that no argument may be made to the jury regarding appellate review of any other matter which might reasonably be expected to cause a juror to consider that he or she shares with anyone other than his or her eleven fellow jurors the responsibility of determining whether the defendant will be sentenced to death.
This jury should not have been given the false hope that their verdict was not the only and final determination of whether the death penalty would be imposed on West. The burden on the jury should not be lessened by reference to the actions of courts of review or, in this case, courts of other jurisdictions.
Appellant also assigns as error the following:
THE LOWER COURT ERRED IN REFUSING TO GRANT A CHANGE OF VENUE.
Mississippi Code Annotated section 99-15-35 (1972) requires that affidavits be filed in support of appellant's motion for change of venue. None were filed in this case. This Court has held that this requirement is essential to the validity of the motion. Gentry v. State, 416 So.2d 650 (Miss. 1982); Butler v. State, 320 So.2d 786 (Miss. 1975); Fabian v. State, 267 So.2d 294 (Miss. 1972); Wilson v. State, 234 So.2d 303 (Miss. 1970); Thompson v. State, 231 Miss. 624, 97 So.2d 227 (1957); Purvis v. State, 71 Miss. 706, 14 So. 268 (1893). This defect in appellant's motion was not noted by the trial court. The court considered and overruled the motion.
Assuming, but not deciding, that the motion is properly before the Court on review, it cannot be said that the court below erred. The matter of granting a change of venue is within the sound discretion of the trial judge. Myers v. State, 268 *1054 So.2d 353 (Miss. 1972); Gallego v. State, 222 Miss. 719, 77 So.2d 321 (1955); Harrigill v. State, 381 So.2d 619 (Miss. 1980); Billiot v. State, 454 So.2d 445 (Miss. 1984). The refusal of a trial court to grant a change of venue will not be reversed unless it is shown that "there has been a clear abuse of discretion." Saucier v. State, 328 So.2d 355, 357 (Miss. 1976); Billiot, supra; Myers, supra,; Gallego, supra.
There was no error in denying appellant's motion for a change of venue.

THE COURT ERRED IN FAILING TO GRANT DEFENDANT'S MOTION TO QUASH JURY PANELS.
In Myers v. State, 268 So.2d 353, 355-356 (Miss. 1972) the Court stated that "the statutory method of selecting a jury is directory and unless there was fraud, or such a radical departure from the procedure prescribed by statute as to be unfair to the defendant or to prevent a fair trial or deny to him due process of law, the conviction will not be reversed." As in Tolbert v. State, 402 So.2d 871 (Miss. 1981) there was not assertion and nothing to indicate that the jury was biased, prejudiced or unfair in this case. All the United States Constitution or the Mississippi Constitution requires of a jury in a criminal case is that it be "impartial." 402 So.2d 873. There is no merit to appellant's assignment of error.

THE LOWER COURT ERRED IN DENYING THE MOTION FOR MISTRIAL BASED UPON THE EXTREMELY PREJUDICIAL REMARKS OF A PROSPECTIVE JUROR MADE BEFORE THE JURY PANELS.
As the record indicates, no objection was interposed by appellant's counsel at the time the remark was made. The unsolicited question was not responded to and the jury was admonished to consider only the evidence developed during the trial. The juror also indicated that she could disregard whatever she may have read and reach a verdict based on the testimony and instructions.
There was no abuse of the trial judge's discretion in overruling appellant's motion.

THE LOWER COURT ERRED IN DENYING DEFENDANT'S MOTION FOR INDIVIDUAL VOIR DIRE.
Rule 5.02 Miss. Unif. Crim. R. Cir. Ct. Prac. (1979), provides:
In the voir dire examination of jurors, the attorney shall direct to the entire venire questions only on matters not inquired into by the court. Individual jurors may be examined only when proper to inquire as to answers given or for other good cause allowed by the court. No hypothetical questions requiring any juror to pledge a particular verdict will be asked.
Appellant's contention that he should have been allowed to individually voir dire jurors out of the presence of the others is not supported by the decisions of this Court. The procedure followed by the trial court has been repeatedly upheld. Billiot v. State, supra; Speagle v. State, 390 So.2d 990 (Miss. 1980); Gray v. State, supra; Peters v. State, 314 So.2d 724 (Miss. 1975).
There was no error in overruling appellant's motion.

THE COURT ERRED IN FAILING TO FIND MISSISSIPPI'S DEATH PENALTY, AS APPLIED, UNCONSTITUTIONAL.
This same question was considered in Gray v. Lucas, 710 F.2d 1048 (5th Cir.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983). In that case extensive medical testimony was submitted along with graphic descriptions by witnesses to executions by cyanide gas. The court of appeals rejected Gray's argument and concluded:
Accepting Gray's proffered facts as proven, we ultimately conclude that they do not as a matter of law establish the eighth amendment claim asserted by him and, therefore, no evidentiary hearing is required. Traditional deaths by execution, such as by hanging, have always involved the possibility of pain and terror for the convicted person. Although contemporary *1055 notions of civilized conduct may indeed cause some reassessment of what degree or length is acceptable, we are not persuaded that under the present jurisprudential standards the showing made by Gray justifies this intermediate appellate court holding that, as a matter of law or fact, the pain and terror resulting from death by cyanide gas is so different in degree or nature from that resulting from other traditional modes of execution as to implicate the eighth amendment right.
710 F.2d 1061.
There is no merit to appellant's assignment of error.

THE COURT ERRED IN ALLOWING IMPROPER REDIRECT EXAMINATION OF GARY McCONNELL.
The testimony of Gary McConnell was offered by the state in rebuttal during the sentencing phase. Appellant contends it was error to allow McConnell to testify on redirect examination in reference to a portion of the alleged confession of West taken on December 25, 1982. McConnell had not testified on this material during direct examination and was allowed to testify on this point over the objection of appellant's counsel.
The general rule is that redirect is limited to matters brought out on cross-examination. Cole v. Tullos, 228 Miss. 815, 90 So.2d 32 (1956). See Tucker v. Tucker, 74 Miss. 93, 19 So. 955 (1896). Here, the questions on redirect were in rebuttal to the questions of the defense on cross-examination, and the defense was also allowed to recross-examine the witness. Moreover, the trial court has broad discretion in allowing or disallowing redirect examinations of witnesses.
There was no error in the redirect examination of McConnell.

THE COURT ERRED IN ADMITTING INTO EVIDENCE THE ALLEGED DECEMBER 25, 1982, STATEMENT OF THE DEFENDANT.
The statement was tape recorded and later transcribed. When the transcript was offered into evidence there was an objection made that the transcript had not been authenticated by the person transcribing it and that it contained references to crimes for which the appellant was not on trial. Gary McConnell who was present when the tape recording was made testified that the transcript fairly and accurately depicted what was on the tape. McConnell also indicated where the tape had been from the time it was made.
Appellant's contention that the transcript was not properly authenticated and that the chain of possession of the evidence was not established is contrary to the record.

THE COURT ERRED IN ALLOWING TONY GILLELAND TO READ FROM A DOCUMENT NOT IN EVIDENCE, WHICH HAD NOT BEEN AUTHENTICATED ON WHICH REFERRED TO CRIMES FOR WHICH THE DEFENDANT WAS NOT ON TRIAL.
The court in its ruling limited the introduction of this document to matters pertaining to this case and sustained appellant's objection to those parts containing reference to occurrences in Georgia. The record does not support appellant's contention.

THE COURT ERRED IN GIVING INSTRUCTIONS S-1-B, S-2-A and S-2-B AND SENTENCING INSTRUCTION S-1.
Appellant argues that since nothing was taken from the person or presence of Kirby Phelps before he was murdered there was no robbery and any reference to robbery is error. While appellant correctly states that one of the essential elements of robbery is that the taking must be from the person or presence of another, the fact that the murder occurred prior to the taking does not lessen the crime. In Cobern v. State, 273 Ala. 547, 142 So.2d 869, 871 (1962), the Court stated:
Nor, under the best reasoned authorities, does the fact that the victim was dead at the time of taking her property militate against the conclusion of robbery. If the intervening time between *1056 the time of the murder and the time of taking of the property formed a continuous chain of events, the fact that she was dead when he took the property could not absolve the defendant from the crime of robbery. Coe's case [State v. Coe, 34 Wash.2d 336, 208 P.2d 863], supra; Carey v. United States, U.S.Ct. of App., Dist. of Columbia Cir., 296 F.2d 422; Alaniz v. State, 147 Tex.Cr.R. 1, 177 S.W.2d 965; People v. Jordan, 303 Ill. 316, 135 N.E. 729; State v. Covington, 169 La. 939, 126 So. 431.
In appellant's other argument under this assignment appellant contends that it was error to give instruction S-1. His argument is that the state was doubling up the aggravating circumstances by telling the jury in part B that the jury could consider that the murder was committed in the course of the commission of a robbery and that the murder was for pecuniary gain.
The lower court's ruling is consistent with prior holdings where the jury verdict was allowed to stand and similar instructions upheld. Tokman v. State, 435 So.2d 664 (Miss. 1983); Smith v. State, 419 So.2d 563 (Miss. 1982); Voyles v. State, 362 So.2d 1236 (Miss. 1978); Bell v. State, 360 So.2d 1206 (Miss. 1978).
There was no error in granting these instructions.

THE COURT ERRED IN FAILING TO SUPPRESS THE ALLEGED CONFESSIONS OF THE DEFENDANT.
West's argument is that he was denied sleep by the Georgia authorities from the time he was taken into custody until he made the statements and that he does not recall making them.
The court found that the statements were voluntarily made and that West was alert. The court noted that West was not contesting the truthfulness of the statements but only the voluntariness of his statements.
The trial court in this case was called on to make a factual determination, and this Court will not overturn a finding of fact made by a trial judge unless clearly erroneous. Neal v. State, 451 So.2d 743 (Miss. 1984); cf. Ratliff v. State, 317 So.2d 403 (Miss. 1975); Hall v. State, 427 So.2d 957 (Miss. 1983).
All the officers present at the time the statements were taken testified at trial and apart from appellant's testimony there was no indication that the confessions were not voluntarily made.
The State followed the procedure that requires that all persons present at the taking of a confession must testify when its free and voluntary character is in question. Kelly v. State, 414 So.2d 446 (Miss. 1982); McLeod v. State, 317 So.2d 389 (Miss. 1975); Nabors v. State, 293 So.2d 336 (Miss. 1974); Stevens v. State, 228 So.2d 888 (Miss. 1969); Scott v. State, 382 So.2d 1091 (Miss. 1980). The finding of the trial judge was not erroneous.
For the reasons stated above this case is reversed and remanded for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
PATTERSON, C.J., ROY NOBLE LEE, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.