LEE, P.J.,
 

 for the Court.
 

 PROCEDURAL HISTORY
 

 ¶ 1. John Woods was found guilty by a jury in the Circuit Court of Jackson County of capital murder and commercial burglary. He was sentenced to life in the custody of the Mississippi Department of Corrections without the eligibility for parole for capital murder, and he was sentenced to seven years for commercial burglary, with the sentences to run consecutively. Woods filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, which was denied by the trial court.
 

 ¶2. Woods now appeals, asserting the following issues: (1) the trial court erred in allowing gruesome and prejudicial photographs into evidence, and (2) the evidence was insufficient to support a verdict of capital murder. Finding no error, we affirm the convictions and sentences.
 

 FACTS
 

 ¶ 3. Woods, Derek Williams, Kerry Johnson, and Bryan Carter shared an apartment together in Gautier, Mississippi. The four men were all between the ages of eighteen and twenty-one, and they were unemployed. Only Williams owned an operating vehicle. On March 11, 2005, all four men drove to Bluff Creek Water Park to go camping. After setting up camp, they decided to go to Walmart and another store to steal some food. On the way to Walmart, they got gas at a gas station and drove off without paying for it. After going back to the campsite and eating, they decided to go burglarize a store to get some beer. Williams picked up a lead pipe (also referred to in the record as a weight bar) from the back of Williams’s truck and tried to break the glass door of a gas station. When he was unsuccessful, Woods picked up the bar and broke the door. They stole beer, soft drinks, and several cartons of cigarettes before heading back to the campsite at approximately 1:30 a.m. When they got back to the campsite, Carter mentioned that he did not go into the store, so Woods and Carter went back to the store that they had burglarized and stole more beer and cigarettes.
 

 ¶ 4. When all the men made it back to the campsite at approximately 2:00 a.m., they began talking about women. Williams stated that he wanted to have sex with Woods’s sister. Woods became enraged, picked up the lead pipe, and walked away from the campsite. Carter went to check on Woods, and Woods told Carter that he was going to kill Williams. Carter testified that he felt Woods was just venting. Carter went back to the campsite and told Johnson that he should go talk to Woods. Woods also told Johnson that he was going to kill Williams. Johnson did not take him seriously and went back to the camp. Then, Woods, who had been holding the lead pipe, walked back to the campsite and started beating Williams in the head repeatedly with the pipe. Williams was lying on the ground in his sleeping bag when Woods sneaked up behind him. Carter testified that as Woods hit Williams, he said, “Why won’t you die?” Woods testified that he had drunk a case and a half of beer before getting angry at Williams and killing him. Conflicting evidence was presented regarding the time between when Woods got angry and when he killed Williams. Woods testified that it was approximately ten minutes from the time he was provoked until he started hitting Williams. Johnson testified that it was approximately twenty minutes or less, although the statement he gave to the police said an hour.
 

 
 *770
 
 ¶ 5. After Woods stopped hitting Williams, he stated he was sorry and that he felt like he was going to throw up. Woods then wrapped Williams’s body, which was still in the sleeping bag, in the tent and told Carter and Johnson to put Williams’s body in the truck. Carter and Johnson did not comply at first, but Woods was still holding the lead pipe and threatened them. Woods then got Williams’s keys out of Williams’s pocket and drove to Alabama. Woods pulled off the interstate onto a dirt road and put Williams’s body on the side of the road. Woods then took Williams’s wallet and drove back to their apartment in Gautier. He burned the wallet in the sink. He put the lead pipe and Williams’s burned wallet into a dumpster. Woods gave the police the location of the dumpster. The police found the items as Woods described.
 

 ¶ 6. Woods continued to use Williams’s truck and drove it to a job interview and to New Orleans. The truck was abandoned and towed on March 17, 2005. On or about March 31, 2005, Woods confessed to his mother and sister that he had beaten Williams to death with a lead pipe. Woods’s mother called the police, who came and arrested him. Johnson and Carter were later arrested and pleaded guilty to manslaughter and commercial burglary.
 

 DISCUSSION
 

 I. DID THE TRIAL COURT ERR IN ALLOWING PHOTOGRAPHS OF WILLIAMS’S BODY INTO EVIDENCE?
 

 ¶ 7. Woods objected to the introduction of eight pictures of Williams’s body on the grounds that the pictures were unnecessary and more prejudicial than probative. Woods argues that since he admitted to killing Williams with a lead pipe, the State’s motive in introducing the pictures was simply to inflame the jury.
 

 ¶ 8. Woods offered to stipulate to the introduction of diagrams of the injuries in lieu of the photographs. The trial court declined to rule on the admissibility of the photographs until hearing testimony from the forensic pathologist, Kathleen Enstice. Outside the presence of the jury, Enstice was questioned regarding whether the diagrams or photographs would be most helpful to the jury. She stated that the diagrams were not necessarily drawn to scale and “do not show exactly what, in [her] opinion, needs to be shown to describe the injuries and explain the injuries.” After hearing her explanation, the trial court ruled that the photographs were more probative than prejudicial and allowed them into evidence.
 

 ¶ 9. The admission or suppression of evidence, including photographs, is reviewed for abuse of discretion.
 
 Chamberlin v. State,
 
 989 So.2d 320, 340(¶ 73) (Miss.2008). “As long as a photograph has probative value and its introduction serves a meaningful evidentiary purpose, it may still be admissible despite being gruesome, grisly, unpleasant, or even inflammatory.”
 
 Id.
 
 “A photograph has a meaningful evi-dentiary purpose when it: (1) aids in describing the circumstances of the killing; (2) describes the location of the body or cause of death; or (3) supplements or clarifies witness testimony.”
 
 Id.
 
 “[Pjhoto-graphs of the victim should not ordinarily be admitted into evidence where the killing is not contradicted or denied, and the corpus delicti and the identity of the deceased have been established.”
 
 Sudduth v. State,
 
 562 So.2d 67, 70 (Miss.1990). However, “[pjhotographs of bodies may nevertheless be admitted into evidence in criminal cases where they have probative value and where they are not so gruesome or used in such a way as to be overly prejudicial or inflammatory.”
 
 Id.;
 
 M.R.E. 403.
 

 ¶ 10. We cannot find that the trial court abused its discretion in allowing the photo
 
 *771
 
 graphs into evidence. Enstice testified that the photographs would be helpful to the jury as the pictures would aid in her description of the circumstances that led to Williams’s death. Also, the photographs showed the location of the body, which was wrapped in the tent and sleeping bag. The body had been cleaned and only closeup photographs of bruises and cuts were shown. Also, the State attempted to narrow the photographs down to only those necessary to aid Enstice’s testimony. The trial court noted that the State only sought to enter into evidence ten of the over 360 pictures taken of Williams’s body. Further, the trial court asked Williams’s family and friends to leave the courtroom before the photographs were shown so as not to elicit an emotional response which might prejudice Woods.
 

 ¶ 11. Keeping in mind that our standard of review for the admission of evidence is abuse of discretion, we find that the trial court did not abuse its discretion in allowing the photographs into evidence. Therefore, this issue is without merit.
 

 II. WAS THE EVIDENCE SUFFICIENT TO CONVICT WOODS OF CAPITAL MURDER?
 

 ¶ 12. Our standard of review regarding challenges to the legal sufficiency of the evidence is well settled. In reviewing the sufficiency of the evidence, “all evidence supporting a guilty verdict is accepted as true, and the [State] must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence.”
 
 Bell v. State,
 
 910 So.2d 640, 646(¶ 16) (Miss.Ct.App.2005) (citing
 
 McClain v. State,
 
 625 So.2d 774, 778 (Miss.1993)).
 

 ¶ 13. The jury was instructed regarding manslaughter, murder, and capital murder. Woods argues that, at the most, the evidence supported a conviction of manslaughter. Capital murder is defined by Mississippi Code Annotated section 97-3-19(2)(e) (Rev.2006) as “[t]he killing of a human being without the authority of law by any means or in any manner ... [w]hen done with or without any design to effect death, by any person engaged in the commission of the crime of ... robbery ... or in any attempt to commit such felonies. ...” “A capital murder conviction under Miss.Code Ann. § 97-3-19(2)(e) must be supported by evidence legally sufficient to support a conviction of both the murder and the underlying felony, had either been charged alone.”
 
 Spicer v. State,
 
 921 So.2d 292, 311(¶ 38) (Miss.2006) (footnote omitted). Therefore, the evidence in this case must support a conviction of murder and robbery.
 

 ¶ 14. Woods argues that the State failed to prove he was guilty of capital murder because the evidence was insufficient to prove murder. He argues that he committed manslaughter under Mississippi Code Annotated section 97-3-35 (Rev. 2006) because he killed Williams in the “heat of passion” after being provoked by Williams’s statement that he wanted to have sex with Woods’s sister. Section 97-3-35 states: “The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.” Murder is defined as “[t]he killing of a human being without the authority of law by any means or in any manner ... [w]hen done with deliberate design to effect the death of the person killed.... ” Miss.Code Ann. § 97-3-19(l)(a) (Rev.2006).
 

 ¶ 15. The jury heard arguments regarding murder and manslaughter. The jury heard testimony from Woods that he became angry over Williams’s comment about his sister. The jury also heard testimony from Carter and Johnson that Woods told them he was going to kill Williams, and that Woods was away from
 
 *772
 
 the campsite for at least ten minutes before coming back and killing Williams. It is well settled that “[t]he jury is the final arbiter of a witness’s credibility.”
 
 Spicer,
 
 921 So.2d at 312(¶ 40). Viewing the evidence in the light most favorable to the State, we find that a reasonable jury could have found Woods guilty of murder rather than manslaughter. Therefore, we find that this argument is without merit.
 

 ¶ 16. Next, Woods argues that he was not guilty of capital murder because the evidence was insufficient to prove the underlying felony of robbery. Robbery is defined as the felonious taking of “the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting-such person in fear of some immediate injury to his person.... ” Miss.Code Ann. § 97-3-73 (Rev.2006). The supreme court has held that “possession of a deceased’s property creates a reasonable inference that the property was stolen.”
 
 Spicer,
 
 921 So.2d at 312(¶ 40). Regarding evidence sufficient to support the underlying felony of robbery in a capital murder case, the supreme court has held as follows:
 

 It is not necessary that the victim be deprived of property prior to death to sustain a conviction for robbery.
 
 West v. State,
 
 463 So.2d 1048, 1056 (Miss.1985). “Am indictment charging a killing-occurring ‘while engaged in the commission of [robbery]’ includes the actions of the defendant leading up to the felony, the attempted felony, and flight from the scene of the felony.”
 
 West v. State,
 
 553 So.2d 8, 13 (Miss.1989).
 
 See also Turner v. State,
 
 732 So.2d 937, 950 (Miss.1999). “Intent to do an act or commit a crime is also a question of fact to be gleaned by the jury from the facts shown in each case.”
 
 Shanklin v. State,
 
 290 So.2d 625, 627 (Miss.1974).
 

 Knox v. State,
 
 805 So.2d 527, 531(¶ 14) (Miss.2002).
 

 ¶ 17. Woods argues that he did not intend to rob Williams, but that he only took Williams’s wallet so it would be harder to identify Williams’s body. Woods also admitted to taking Williams’s keys and truck, but he argues that he was allowed to freely use Williams’s truck before his death; therefore, he argues that the State could not prove that he intended to steal the truck just because he was driving it after Williams’s death. The jury, as the fact-finder, was left to determine if Woods intended to rob Williams of his keys, truck, or wallet when committing the murder.
 

 ¶ 18. Giving the State all reasonable inferences that can be drawn from the evidence, we find that the elements of robbery were established beyond a reasonable doubt. We find that this issue is without merit as the evidence was legally sufficient to support a verdict of capital murder. The judgment of the trial court is affirmed.
 

 ¶ 19. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, CAPITAL MURDER, AND SENTENCE OF LIFE WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION; COUNT II, COMMERCIAL BURGLARY, AND SENTENCE OF SEVEN YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.